McMAHON, Relator, v. Mead, Respondent.

(139 N. W. 122.)

1. **Habeas Corpus—Res Judicata—Subsequent Application—Insanity—Present Sanity.**

   Since an order of a circuit court or judge on a writ of habeas corpus, is a final order affecting a substantial right, and appealable, it is res judicata as to every question that was or could have been presented upon such writ, except that on a subsequent application for the writ to secure release of an alleged insane person from an asylum, where the application alleges that the applicant has been restored to reason, the court, under Sec. 2826, Pol. Code, may consider and determine the one question of present sanity.

2. **Constitutional Law—Insanity Proceedings—Hearing—Restraint—Due Process of Law—"Conviction."—Deprivation of Liberty.**

   Pol. Code, Sec. 2811, providing for a civil investigation of a complaint filed against a person alleged to be insane, wherein it authorizes proceedings in absence of the person whose mental condition is involved, when it appears that his presence would be injurious to him, or attended with no advantage, is not for that reason in violation of the constitutional guaranty of due process of law, because it does not guarantee a hearing before conviction, as the word "conviction" implies a finding of guilty of a criminal offense, whereas it is no crime for one to be insane, and such proceedings are not criminal in nature. **Held,** further, that such persons are not, in such cases, deprived of liberty, in the constitutional sense.

3. **Same—Insane Persons—Service of Warrant, Mandatory as Notice—Hearing—Representation by Counsel.**

   Pol. Code, Sec. 2811, providing that, on filing of an information of insanity, the insanity commissioners shall take steps to investigate the grounds of information, and issue a warrant, which may be served upon the person subject to the inquisition, by the sheriff, ets., wherein it provides for service of the warrant on such person, in that it would advise him of the proceedings against him, is mandatory, and therefore provides for such notice as is due process of law; and such person, so served, is not one who is prevented from attending the hearing or refused opportunity to be represented there by counsel.

4. **Same—Insane Persons—Disease—Police Power—Constitutional Provision.**

   Insanity is a disease, and the state has a right to treat one who has the misfortune to suffer from it, as it does one who has a contagious malady, and to regulate and treat the case for protection of the community; and if public safety demands it, he may be immediately confined, either with or against his will, if he is liable to commit acts of violence; and held, that,

outside of Secs. 2826 and 2811, Pol. Code, Sec. 2824 thereof, contains ample provision whereby one confined in State Hospital, or any one in his own behalf, may make application to have his sanity inquired into, and to be discharged if found sane, and such statute is not unconstitutional.

5. **Evidence—Sanity—Change of Condition—Presumptions—Restoration to Sanity.**

Where relator when committed to an insane hospital was adjudged insane, and the continuance of the insanity had been adjudicated on two prior orders on habeas corpus, it will, in a subsequent habeas corpus proceeding, be presumed to have continued, in absence of any new evidence of a change in relator's condition since such prior hearings; and it would be error to hold, under such a state of evidence, that the allegation that she had been "restored," as prescribed in Sec. 2826, Pol. Code, had been established.

(Opinion filed December 28, 1912.)

Application for writ of habeas corpus, on the relation of Nellie McMahon, against L. C. Mead, Superintendent of the State Hospital for the Insane. Writ discharged, and relator remanded.

*Joe Kirby,* for Relator.

No evidence is presented that she has shown any indication of insanity in the last four months, since the hearing before Judge Tripp. Dr. Mead has found no evidence of insanity in her demeanor since she entered the institution. If this does not indicate sanity at present how will we ever establish it?

Constitutionality of law.

The present law is unconstitutional because it does not guarantee a hearing before conviction; because it does not authorize any one connected with a lunacy commission to administer an oath or even receive testimony guaranteed by the sanctity of an oath. 57 N. W. 794; 32 Mich. 1; 5 L. R. A. 359; 55 L. R. A. 856.

*Royal C. Johnson,* Attorney General, for Respondent.

One who has notice and hearing cannot object to the constitutionality of a law. Avant v. Flynn, 2 S. D. 153; Tripp v. Yankton, 10 S. D. 516, and cases cited therein.

The statute of Iowa, identical with the South Dakota statute, is found in the 1873 Code of Iowa, section 1400. Cases sustaining the Iowa law: County of Black Hawk v. Springer, 10 N. W.

791, 1881. This case re-affirmed by Supreme Court in Chavames v. Priestly, 9 L. R. A. 193, 1890; 45 Northwestern, 766; 80 Iowa, 316; In re Breece, 48 Northwestern, 991, decided in 1891; Vol. 13, American and English Ann. Cases, pp. 887-874; Nobles v. State of Georgia, 168 U. S. 398; In re Boyett, 103 American State Reports, 944, p. 950; 67 L. R. A. 973, 1 Ann. Cases, 729; Evans v. Johnson, 23 L. R. A. 738.

Cases holding that a jury trial is not necessary in order to satisfy amendment 14 of the Constitution on depriving a person of liberty without the process of law. Simons v. Craft, 182 U. S. 427, 21 S. Ct. 836, 45 U. S. (L. E.) 1165; In re Clary, 149 Calif. 732; In re Brown, 4 American Cases, 488, 18 Northwestern, 486; In re W. H. Lambert, 55 L. R. A. 856; Hunt v. Scarcy, 67 Southwestern, 206; In re Gannon, 5 L. R. A. 359.

WHITING, J. The relator is an inmate of the South Dakota State Hospital, a public institution devoted to the care and treatment of the insane. The respondent is the superintendent of such hospital, and has had the relator under his care and custody under and by virtue of a warrant of commitment issued by the commissioners of insanity of Meade county, S. D., under date of October 25, 1911, which warrant recites, among other things, that the commissioners had found relator to be insane. Upon a petition filed on behalf of relator, which petition sets forth the above facts, and alleges "That this plaintiff is not insane, but has full reason, and is now of sound mind, and able to in all respects maintain and care for herself," this court issued a writ of habeas corpus commanding respondent to have the said relator before this court, together with the time and cause of her detention. The respondent by way of return to said writ admitted that he held said relator in his custody under and by virtue of the said warrant, a copy of which was made a part of the return. Besides evidence bearing directly upon the present mental condition of relator, there was undisputed evidence showing that, immediately after the issuance of the warrant of commitment, relator sued out a writ of habeas corpus before the judge of the Sixth judicial circuit, and that but a few months ago she sued out another writ of habeas corpus before the judge of the First judicial circuit; that, upon the hearing of each of said writs, the question of the then present sanity of relator was fully gone into,

and, at least upon the last of said hearings, every question raised by relator upon the present hearing was fully gone into and passed upon by the learned judge by whom the writ was issued; and that upon each of said hearings the relator was remanded to the custody of respondent.

Relator bases her petition for a discharge on three separate contentions, to-wit: (1) That the law under which she was committed was unconstitutional; (2) that the warrant of commitment was not properly issued, and is therefore void; (3) that relator is now sane.

[1] So far as the first two contentions are concerned, we are clearly of the opinion that the order of remand issued by either one of the circuit judges is res judicata thereof, such an order being res judicata upon any question which was, or could have been, brought before such judge. We are not unmindful of the fact that in a majority of the jurisdictions of this country the courts hold an order of the court remanding one who has sought discharge upon habeas corpus not to bar another court from discharging such person upon the very ground passed upon by the former court; but, where the reason for a rule of law does not exist, such rule should not prevail, and the reason upon which such rule is based is that an order in habeas corpus proceedings is not appealable. The right to appeal in any matter is purely statutory, and, in those jurisdictions where an appeal from an order upon habeas corpus is denied, the courts base such denial upon the fact that such courts do not deem an order in habeas corpus proceedings to be a final order, and, not being considered of a final order, there is no statute authorizing an appeal therefrom. Thus we find the decisions of such courts traveling in an endless circle. The order, not being final, is not appealable. The order, not being appealable, is not res judicata. The order, not being res judicata, is not final, and the relator may therefore renew his application as oft as he sees fit. Hurd on Habeas Corpus, 573. Happily the courts of this state are not traveling along this unending road, but travel upon a straight path that leads on to a definite end. Under the rulings of our courts, an order made in habeas corpus proceedings is a final order. Being a final order, it is appealable. Being appealable, it is res judicata of all matters that were or could have been raised upon such proceeding. In

U. S. ex rel. James Scott v. Burdick, 1 Dak. 137, 46 N. W. 571, the territorial court, after a full discussion of its reasons therefor held that an appeal lay from the order of the district court in a habeas corpus proceeding. At the same term of court, in Re James Scott, 1 Dak. 135, 46 N. W. 512, 513, the court said: "After careful consideration, we have arrived at the conclusion that this writ should be abated. Under our laws, the principle of res judicata is applicable to a proceeding upon habeas corpus. In such cases the district court has original concurrent jurisdiction with this court, and, where a court has jurisdiction, it has a right to decide every question which arises in the cause; and, whether its decision be correct or otherwise, its judgment until reversed is binding in every other court. In the application of the principle of res judicata, it ought to make no difference whether the first writ was returnable before a court of record or a Judge out of court; for in neither case ought the party suing out the writ be permitted to proceed ad infinitum before the same court or officer, or before another court or officer having concurrent jurisdiction, to review the former decision, while the facts and conditions remain the same. If the relator is dissatisfied with the decision of the court below, he cannot properly ask us to review it in this mode. Our appellate jurisdiction can only be invoked and exercised in the manner prescribed by law." This court in the case of In re Hammill, 9 S. D. 390, 69 N. W. 577, said: "Proceedings in habeas corpus are in their nature civil. Ex parte Tom Tong, 108 U. S. 556, 2 Sup. Ct. 871 (27 L. Ed. 826). When instituted in the circuit court, its decision will be a final order, affecting a substantial right made in a special proceeding, from which an appeal will lie to this court." A discussion of the principles underlying the question before us is to be found in the case of People ex rel. Campbell v. Second Judicial District Court, 26 Colo. 380, 58 Pac. 608, 46 L. R. A. 855. The court made the following statement, which recognizes the principle which we uphold: "In the exercise of our original jurisdiction, we may properly, as we have recently done, determine on habeas corpus the constitutionality of a statute under which a person was convicted, if no other remedy exists, but we have always declined to exercise such jurisdiction when adequate relief can be afforded by write of error." In Church on Habeas Corpus, par. 389b, the author says: "No appeal is allowed from a judg-

ment in a habeas corpus case unless authorized by statute; but in many of the state courts, and in the federal courts, as well as in England and Canada, this statutory right of appeal is now given; and it operates as a kind of a substitute for successive applications from court to court, which the prisoner had a right to make at common law, in case his application was refused."

The reasoning and conclusions in the case of Perry et al. v. McLendon, 62 Ga. 598, are so directly applicable to the case now before us that we feel warranted in quoting at considerable length from the decision; the underscoring being ours. The relators had been arrested in a civil action and were seeking discharge on habeas corpus, but we thing the words of the court are applicable whatever the nature of the confinement. The court said: "Successive judgments on the same matter and between the same parties have been rendered, all of them by courts of competent jurisdiction, and each of them either directly adjudicating the imprisonment complained of to be legal, or applying the bar of a previous direct adjudication of that question. In deciding the second case of the whole series (the first before him), the judge of the superior court entered fully into the legal questions involved in the cause of the imprisonment, ruled the same adversely to the petitioners, and, as a consequence, remanded them to the custody from whence they came. That judgment has never been reversed, nor even excepted to. After it was rendered, the third writ in the series was applied for and granted; and, after an adverse judgment on the same by the ordinary (which also still stands in full force), the fourth writ was applied for and granted. In the sheriff's answer to this last he set up as a bar the judgments rendered in the preceding cases, besides again urging the legality of the original cause of arrest and detention. *Can there be a doubt that the bar is effective, inasmuch as judgments on habeas corpus are, in this state, subject to review* by writ of error, if rendered by the judge of the superior court; by certiorari, if rendered by the ordinary? See (Livingston v. Livingston) 24 Ga. 379. It would seem from the authorities, or some of them (see Hurd on Habeas Corpus), that, where there is no such power of review, there may be one writ of habeas corpus after another ad infinitum. But, if there can be a review, is there any reason, especially in civil cases, in which the struggle is between party and party, and not with the

king or commonwealth on one side, and the subject or citizen on the other, why the first adjudication, if·acquiesced in, should not be final and conclusive? We can think of none. Such is the general rule of law in other cases, and why cases of habeas corpus should not be included in its application we cannot perceive or divine. Should the legality of an imprisonment in a civil case forever be and remain an open question, so long as the restraint continues? Is there no way to close it, and ought there to be none? Is liberty so precious? There is no such indulgence to anything else, not even to life itself. A single judgment will serve to hang a man, if left to stand unreversed. He cannot have trial after trial to ascertain if he is guilty, and determine whether he is to be executed. One complete trial, fair and legal, will carry him out of the world; and why should it not suffice to keep him in jail until some new right to a deliverance has arisen? Is the grievance, real or supposed, of a prisoner the stone of Sisyphus which courts can never bring to a place of rest? And, if called to lift it up the same hill as often as it rolls down, must they comply? Doubtless there is an obligation to issue the writ of habeas corpus whenever, and as often as, it may be applied for, provided the petition contains the requisite matter, is in due form, duly authenticated, duly presented, and does not show on its face that the imprisonment, though complained of as illegal, is in fact legal. Code, 4012. But, when it appears on the return or at the hearing that the legality of the imprisonment has already been adjudicated upon a previous writ between the same parties by a competent tribunal, the production of that judgment is the end of controversy. Further writs may be applied for and issued, but to each and all of them the one valid and subsisting judgment will be a conclusive answer as to any and all objections to the legality of the restraint which were embraced in the first petition, or which could and should have been embraced in it." In Hurd on Habeas Corpus, 575, it is stated: "Giving to the order on habeas corpus the effect of a final judgment may lead in a degree to the gradual introduction into the practice under the writ of the stricter rules of proof and the more circumspect delays of regular actions; and must deprive the prisoner of the right of repeated application for the benefit of the writ, not only to the court of last resort, but to the several judges of it in vacation." We therefore conclude that,

where, as in this state, an order made on habeas corpus is a final order, and, as such, appealable, such order, until reversed upon appeal, is res judicata upon all questions which were, or could properly have been, determined thereby.

. So far we have discussed the question of an order on habeas corpus being res judicata as though there was no statute making it so other than statutory provisions allowing appeal. We have, however, as a part of the law under which the warrant of commitment was issued herein, section 2826, Pol. Code, which reads as follows: "All persons confined as insane shall be entitled to the benefit of the writ of habeas corpus, and the question of insanity shall be decided at the hearing, and if the judge or court shall decide that the person is insane, such decision shall be no bar to the issuing of the writ the second time whenever it shall be alleged that such person has been restored to reason." Under such section no person confined as insane is entitled to a second writ of habeas corpus, unless it be alleged "that such person has been restored to reason." It follows that this one question of fact as to present sanity is the only matter that can properly be considered upon a second writ, and that the order upon the prior writ stands as res judicata upon all matters that could have been presented upon such writ.

. [2] Although what we have said above renders unnecessary any consideration of the constitutionality of the law under which relator was confined, yet, inasmuch as a determination of such question is of the gravest importance to the people of this state, as, if such law is unconstitutional, not one inmate of our State Hospital was legally committed thereto, we feel justified in passing upon the constitutionality of such law, and thus put at rest any uncertainty that would otherwise exist in relation thereto. Relator urges that "the present law is unconstitutional because it does not guarantee a hearing before conviction," and contends that for such reason it does not insure that "due process of law" guaranteed to every citizen by the fourteenth amendment to the federal Constitution. By the use of the word "conviction," it would appear that counsel for relator has fallen into the same error revealed in many cases. That word implies that one has been found guilty of some criminal offense. It is no crime for one to be insane, and proceedings under the law before us are in no sense criminal in nature.

The section complained of is section 2811, Pol. Code, and its reads as follows: "On the filing of an information as above provided, the commissioners shall at once take steps to investigate the grounds of the information. For this purpose they may require that the person for whom such admission is sought be brought before them, and that the examination be had in his or her presence, and they may issue their warrant therefor and provide for the suitable custody of such person until their investigation shall be concluded. Such warrant may be executed by the sheriff or any constable in the county, or if they shall be of the opinion from such preliminary inquiries as they shall make, and in making which they shall take the testimony of the informant if they deem necessary or desirable, and of other witnesses if offered, that such course would probably be injurious to such person, or attended with no advantages, they may dispense with such presence. In their examination they shall hear testimony for and against such application, if any is offered. Any citizen of the county, or any relative of the person alleged to be insane may appear and resist the application, and the parties may appear by counsel if they elect. The commissioners, whether they decide to dispense with the presence before them of the person or not, shall appoint some regular practicing physician of the county to visit or see such person and make a personal examination touching the truth of the allegation in the information, and touching the actual condition of such person, and forthwith report to them thereon. Such physician may or may not be of their own number, and the physician so appointed and acting shall certify under his own hand that he has, in pursuance of his appointment, made a careful personal examination as required and that on such examination he finds the person in question insane, if such be the fact, and if otherwise, not insane; and in connection with his examination the said physician shall endeavor to obtan from the relatives of the person in question, or from others who know the facts, correct answers so far as may be to the interrogatories hereinafter required to be propounded in such cases, which interrogations and answers shall be attached to his certificate." This section is taken almost verbatim from the Code of Iowa, and the Supreme Court of that state, in the case of Chavannes v. Priestly, 80 Iowa, 316, 45 N. W. 766, 9 L. R. A. 193, has said: "Of course, if the commissioners' warrant

should issue, and the party is brought before the board, there would be both notice and presence; and the law seems to contemplate such presence, except if the board at the preliminary inquiry, when the information is filed, shall be of the opinion therefrom that such course would probably be injurious to such person, or attended with no advantage, it may be dispensed with. Now, it is easy to imagine a case in which such presence could not with safety to the person be had, nor could such a hearing with safety be had in his presence, and such persons are those most likely to need the beneficial provisions of the law, and they must be deprived of them if there is a constitutional barrier to the proceedings in their absence, and without notice. We assume, of course, that no importance is attached to an idle form of notice in such a case, as where it would not be understood because of the infirmity, or the notice for any reason be merely formal. The law sometimes provides for these formal notices, but it is in anticipation of results not to be contemplated in this class of proceedings with the precautionary provisions of the statute under which they are conducted. The law requires that a physician shall visit the person, and examine him, and shall confer with the relatives upon the subject; so that in every case there is actual notice to relatives, who may be present, and would be likely to take an interest in behalf of the person. Any citizen of the county or relative may appear and resist the application, and a full and free inquiry is permitted. The law and the courts are so jealous of the rights of persons, both as to liberty and property, that they view with distrust any proceedings that may affect such rights in the absence of notice; and to our minds this same jealousy pervades the statute in question, and the ruling consideration in allowing these proceedings, in the absence of the party and without notice, is personal to him and designed for his interest. It is not a case in which he is adjudged at fault, or in default, and for which there is a forfeiture of liberty or property, but only a method by which the public discharges its duty to a citizen. The misfortunes of citizens sometimes place them where, for their care and preservation, restraints are necessary, and such restraints are even justified at the hands of private persons. They are not in such cases 'deprived of liberty' within the meaning of the Constitution, and plaintiff bases his claim in this respect upon the constitutional pro-

vision that 'no person shall be deprived of life, liberty or property wthout due process of law.'"

[3] We think, moreover, that this section should be construed so that it would in all cases guarantee notice before hearing. The clause that "such warrant may be executed, * * *" being a provision which, if carried into effect, would be beneficial to the party arrested in that it would advise him of the proceedings against him, should be construed as mandatory, thus bringing this statute directly under the ruling in the case of In re Lambert, 134 Cal. 623, 66 Pac. 851, 55 L. R. A. 856, 86 Am. St. Rep. 296, to the effect that: "Such arrest would itself be a notice to him of the charge, under which he would be afforded an opportunity for a hearing thereon." And, as was said by the same court in Ex parte Clary, 149 Cal. 732, 87 Pac. 580: "If the act does authorize a valid commitment under any proceeding, we should have to presume, under the case as presented to us, that the authorized proceeding was duly followed." The state of Alabama has a statute that, so far as its provisions for notice prior to the hearing are concerned, is practically identical with ours. This statute came before the Supreme Court of the United States in a case wherein it was claimed that the proceedings thereunder were invalid for want of "due process." That court held that, inasmuch as the party complaining was "not in fact prevented from attending the hearing or refused opportunity to be represented there by counsel," she was not denied any of her constitutional rights.

[4] The state of Rhode Island had a statute which in the case of Doyle, Petitioner, 16 R. I. 537, 18 Atl. 159, 5 L. R. A. 359, 27 Am. St. Rep. 759, was held unconstitutional, for the reason that its provisions were in conflict with the fourteenth amendment to the Constitution of the United States, because such statute provided no mode whereof the person confined could avail himself as of right in his own behalf. This statute was amended by inserting therein a provision similar to section 2826, supra, and, as so amended, was sustained as constitutional in the case of In re Crosswell, 28 R. I. 137, 66 Atl. 55, 13 Ann. Cas. 874, the court saying: "None of those objections apply to the present law. The function of the writ of habeas corpus was enlarged to apply to such cases by Pub. Laws, c. 819, now embodied in section 19, c. 82, Gen. Laws, as amended by C. & P. Act, par. 1112, by mak-

ing it the duty of the court, upon an application for such writ, 'to inquire and determine as to the sanity or insanity or the necessity of restraint of the person confined, at the time such application was made.' The section as now in force further provides for trying the issue to a jury in the discretion of the court, and enacts that: 'If it appears on the verdict of the jury, or if it is the opinion of the court, if the issue is not submitted to a jury, that the person so confined is not insane, or that he is not dangerous to himself or others and ought not longer to be so confined, he shall be discharged from such confinement.' The right of filing with a justice of the Supreme Court a petition for the commission to determine the question of sanity or insanity is given to the person confined, as well as to any one on his behalf, and he is also given the right to prosecute such petition in person. Gen. Laws, c. 82, 15, 16. In short, the commitment by a parent, guardian, or relative under the law considered in Doyle, Petitioner, was final and permanent so far as concerns any right in the person confined to have a trial of the question of his sanity, while the present law gives the power to confine him on such a commitment only until he chooses to apply to the court for relief. * * * It seems to us that much popular misapprehension of this subject grows out of the feeling that constraint of a person as insane is analogous to the punishment of a criminal and carries with it some stigma; and to this may be added in some minds a repulsion to submitting one's self or one's frend to hospital treatment away from the continued supervision of family and personal friends. But insanity is a disease, and the state has the right to treat one who has the misfortune to suffer from it as it does one who has a contagious malady. The exercise of this right of self-protection must be regulated by the circumstances of the case. If it is dangerous to the community that a citizen should go at large, whether because he is liable to spread contagin or to commit some act of violence, public safety demands that he be immediately confined, either with or against his will, and the extent of his personal right can only be to test by judicial process, at a time when it may safely be done, the propriety of his restraint."

The Supreme Court of Massachusetts in Dowdell, Petitioner, 169 Mass. 387, 47 N. E. 1033, 61 Am. St. Rep. 290, said of their statutes: "These statutes do not in terms require any notice to the

person alleged to be insane before the order of commitment is signed; and probably no such notice is required by construction, in view of the long usage to the contrary in this commonwealth. But ample provision is made by later sections of the same chapter for his discharge afterward by any two of the trustees of the hospital, or, upon judicial proceedings, by a justice of the supreme judicial court, upon the written application of any person, if it appears that the person so confined is not insane, or that he is not dangerous to himself or others, and ought not longer to be so confined: Bub. Stats. c 87, 40-44." And the same court in the case of Bumpus v. French, 179 Mass. 131, 60 N. E. 414, speaking through Justice Holmes, now of the federal Supreme Court, said: "The great provisions intended to protect liberty and property cannot be read as extending with mathematical logic to every case where there is an unpaid-for diminution of property rights or a temporary restraint of personal freedom without a hearing of both sides in court. It does not need argument to show that sometimes it may be necessary to impose such temporary restraint without the delay required for a hearing and even before notice to the party restrained. Not to mention other instances familiar to the law, the necessity in cases of alleged insanity to protect the property until the principal question is decided has been recognized and acted upon many times under or possibly even without special authority of statute." An examination of our statutes discloses that, outside of the provisions found in the sections hereinbefore quoted, he have in section 2824, Pol. Code, ample provision made whereby one confined in the State Hospital, or any one in his behalf, may make application to have his sanity inquired into and to have him discharged if found sane. Our statute is clearly constitutional.

[5] Had the relator been restored to sanity at the time this writ was sued out? That she was insane, when first committed to respondent's custody, and also at the dates of the two orders entered upon the habeas corpus proceedings, stands as an adjudicated fact. This insanity is presumed to have continued. 22 Cyc. 1115. There is not the slightest evidence of any change in the condition of relator since these hearings, and we can do no better than adopt the following from the decision of the learned judge of the First circuit in passing upon the application of relator for a discharge: "Before me there were no inquiries of her in regard

to subjects respecting which it is contended she is deranged, or as to how she might, or thought she would act in regard to them. As I view it, the case is without any light or evidence as to a changed mental condition respecting the subject of derangement. In addition to this, it is the conviction of the superintendent of the asylum, a man of long and practical experience in mental diseases, that she is insane. * * * I must assume from the very unusual circumstances connected with this case that these gentlemen have given this case special attention, and I must regard their conclusions entitled to very great weight. In view of the probative force of the finding of the commissioners, the legal presumption arising therefrom, lack of evidence at this hearing, on the subject of the alleged derangement theretofore found, and entire evidence submitted, I feel reasonably clear that it would be error for a court to hold that the allegation that she had been 'restored,' as prescribed by section 2826, had been established."

The writ heretofore issued herein is discharged, and the relator remanded to the custody of respondent under the warrant of commitment held by him.