2002 SD 31

**PENNINGTON COUNTY, a political Subdivision of the State of South Dakota, Plaintiff and Appellant,**

v.

**STATE of South Dakota, Acting by and Through the UNIFIED JUDICIAL SYSTEM; D.J. Hanson, in his Official Capacity as Acting State Court Administrator; and Jeffrey Krattenmaker, in his Official Capacity as Court Administrator for the Seventh Judicial Circuit Court, Defendant and Appellees.**

No. 21910.

Supreme Court of South Dakota.

Argued on Nov. 14, 2001.

Decided Feb. 27, 2002.

---

James S. Nelson and David E. Lust of Gunderson, Palmer, Goodsell & Nelson, Rapid City, Attorneys for plaintiff and appellant.

Thomas J. Welk and Lisa Hansen Marso of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, Attorneys for defendant and appellees.

GORS, Acting Justice.

[¶ 1.] Pennington County sued the State of South Dakota Unified Judicial System (State) for a judgment declaring that the county did not have to provide space for court services in the courthouse or that the State had to pay for the space. The trial court ruled in favor of the State and the county filed this appeal. We vacate the judgment and dismiss the action.

## FACTS

[¶ 2.] Pennington County, South Dakota, is the second most populous county in the state. It has a large courthouse which more than doubled in size in 1991 to meet the expanding need for courtrooms, the clerk of courts and court services. The county also built a new jail next to the courthouse. There are five circuit judges and three magistrate judges in the Pennington County Courthouse plus their court administrator, secretaries, law clerk and court reporters. In addition, the courthouse contains the clerk of courts office, eighteen court services officers and clerical staff. The judges also serve Custer and Fall River Counties which, together with Pennington County, make up the Seventh Judicial Circuit. County offices are also located in the courthouse, including the register of deeds, auditor, treasurer and others. The state's attorney and the sheriff are located immediately adjacent to the courthouse in a public safety building which also houses the Rapid City police department.

[¶ 3.] In 2000, the county determined that it needed more room for law enforcement and the state's attorney, and the county commission concluded that court services should vacate the courthouse or pay rent. In July of 2000, the county requested that the State remove court services from the courthouse. The State declined. The county sued the State (and the State Court Administrator and the Seventh Circuit Court Administrator in their official capacities) seeking a declaratory judgment that the county did not have to provide space for court services in the courthouse or that the State had to pay for the space.

[¶ 4.] This Court's previous Chief Justice appointed the Honorable Rodney J. Steele, a circuit court judge from Brookings, to avoid having a local judge, who might be interested in the outcome, decide the case. After a court trial, Judge Steele ruled in favor of the State and Pennington County appeals.

[¶ 5.] Court services officers conduct adult presentence investigations, SDCL 23A–27–5, and juvenile home studies, SDCL 26–7A–88, and supervise adults, SDCL 23A–27–12, 23A–27–12.1, 23A–27–13 and 23A–27–18.2, and juveniles who are placed on probation, SDCL 26–8B–6, or who are diverted from formal proceedings, SDCL 26–7A–10(3). Court services officers perform an integral part of the court functions. *Hansen v. Kjellsen*, 2002 SD 1, ¶ 9, 638 N.W.2d 548, 550 (citing *Dorman v. Higgins*, 821 F.2d 133, 137 (2d Cir.1987); *Shelton v. McCarthy*, 699 F.Supp. 412, 413 (W.D.N.Y.1988)).

[¶ 6.] Currently, court services is located in the courthouse in every county in South Dakota except Beadle County (Huron), where court services is located next door in the annex.[1] Prior to 1991, due to lack of space in the Pennington County courthouse, court services and a circuit judge were located at the juvenile detention center, which was more than a mile

---

**1.** At one time, Sixth Circuit Court Services was located in the old Carnegie Library in Hughes County. The library was located on the courthouse square, next door to the courthouse.

from the courthouse. Location of hearings, warrants for failure to appear, processing difficulties, delays in presentence reports and difficulty collecting restitution and fines resulted in the establishment of a planning committee to examine the space issues. The planning committee recommended, and the Pennington County Commissioners voted, to build an annex to the courthouse and to place court services on the second floor. Construction started in 1988 and the annex was occupied by 1991. Court services has remained in the annex to this date.

[¶ 7.] The legislature has previously spoken through appropriations regarding court services. Since unification of the judicial system in 1975, the legislature has appropriated money to pay for salaries, expenses, equipment and supplies for circuit courts and court services but has not appropriated any money to pay for any space. The legislature in its wisdom and within its authority has left it to the counties to provide and pay for space for courts and court services as counties have done throughout the entire history of the State. If the legislature wanted the State to pay all sixty-four counties for the space provided to court services, it could have said so in no uncertain terms and appropriated the money to pay the rent.

[¶ 8.] Both before and after court unification in 1975, it has been well understood that the counties provided and paid for space for courts and court services. Although there is no specific statute requiring the county to pay, custom and usage, while not determinative, is instructive in this case. Until 1983, counties were not only expected to provide space, but they were also expected to pay a share of the overall cost of the court system. *See* 1974 SD Sess.Law ch. 158. Then in 1983, counties were given a credit for the space provided. 1983 SD Sess.Law ch. 162 § 5.

When the counties' share of the cost of the court system was phased out, the credit was repealed, too. 1985 SD Sess.Law ch. 164. However, repealing the credit did nothing to repeal the requirement to provide the space; there was just nothing to credit it against anymore.

## STANDARD OF REVIEW

[¶ 9.] Jurisdiction may be raised at any time. *Devitt v. Hayes*, 1996 SD 71, ¶ 6, 551 N.W.2d 298, 300. This Court may raise issues of jurisdiction *sua sponte*. *Weins v. Sporleder*, 2000 SD 10, ¶ 8, 605 N.W.2d 488, 490; *Bohlmann v. Lindquist*, 1997 SD 42, ¶ 10, 562 N.W.2d 578, 580; *State v. Phipps*, 406 N.W.2d 146, 148 (S.D.1987). Questions of jurisdiction are reviewed *de novo*. *White Eagle v. City of Fort Pierre*, 2000 SD 34, ¶ 4, 606 N.W.2d 926, 928; *Risse v. Meeks*, 1998 SD 112, ¶ 10, 585 N.W.2d 875, 876; *State v. Vandermay*, 478 N.W.2d 289, 290 (S.D. 1991).

## ANALYSIS AND DECISION

[¶ 10.] In the United States, the individual states have all authority except that which they have delegated to the federal government or prohibited to themselves. US Const art 1 §§ 8, 10; *McDonald v. Sch. Bd. of Yankton Ind. Sch. Dist. No. 1*, 90 S.D. 599, 606, 246 N.W.2d 93, 97 (S.D.1976) (citing *Kramar v. Bon Homme County*, 83 S.D. 112, 115, 155 N.W.2d 777, 778 (1968)). The states have created local government entities such as counties, townships and cities to do the states' work at the local level. These subordinate arms of the State have only that authority specifically given by the state legislature. SDConst art IX § 1. "[A county] has only such powers as are expressly conferred upon it by statute and such as may be reasonably implied from those expressly granted." *State v. Quinn*,

2001 SD 25, ¶ 10, 623 N.W.2d 36, 38 (citing State *ex rel. Jacobsen v. Hansen*, 75 S.D. 476, 478, 68 N.W.2d 480, 481 (1955) (citations omitted)). Counties, like cities, lack inherent authority and derive their power from the legislature. *See City of Marion v. Schoenwald*, 2001 SD 95, ¶ 6, 631 N.W.2d 213, 216; *Welsh v. Centerville Township*, 1999 SD 73, ¶ 10, 595 N.W.2d 622, 625; *Donovan v. City of Deadwood*, 538 N.W.2d 790, 792 (S.D.1995) (citations omitted). A county is a public corporation which exists only for public purposes connected with the administration of state government. *County of Tripp v. State*, 264 N.W.2d 213, 218 (S.D.1978). A county and its revenues are subject to state legislative control where there is no express contrary restriction.[2] *Id.* at 218 (citing *Slutts v. Dana*, 138 Iowa 244, 115 N.W. 1115 (1908)).

■ [¶ 11.] The primary purpose of a courthouse is for court. State *ex rel. Hottle v. Bd. of County Comm'rs*, 52 Ohio St.2d 117, 370 N.E.2d 462, 464 (1977). The primary purpose is the reason the building is called a courthouse.[3] Pennington County agrees that the court should be in the courthouse and that court services is an arm of the court. The questions are whether court services should be in the courthouse with the court and who must pay for the space.

[¶ 12.] The State argues that the UJS has the inherent power to compel the county to provide space in the courthouse at county expense. However, we do not determine whether the UJS has inherent authority to require the county to provide space in the courthouse at county expense.

[¶ 13.] Article II of the South Dakota Constitution declares that the powers of the State government are divided into three distinct departments, the legislative, executive and judicial. The judicial department is now designated as the UJS. Therefore, this action, while in part being designated by the county as against the UJS and two of its administrators, who are sued only in their official capacity, is in reality a suit against the State itself.

■ [¶ 14.] The State is immune from suit unless it consents. *Wilson v. Hogan*, 473 N.W.2d 492, 494 (S.D.1991). The legislature may designate "in what manner and in what courts suits may be brought against the state." SD Const art III, § 27. "The State may also waive sovereign immunity by legislative enactment identifying the conditions under which lawsuits of a specified type would be permitted." *Wilson*, 473 N.W.2d at 494. The State did not consent to be sued in this case. Therefore, the trial court did not have jurisdiction to enter declaratory relief in favor of the county.

■ [¶ 15.] Generally, counties cannot sue the state. In *City of New York v.*

---

2. "[T]he duty of each county to pay the expenses of the local administration of justice within the county ... arises as well from our general system of county organization, as from express statutes, defining the duties of counties on this particular subject. Indeed, but a part of these duties which have always been recognized as devolving upon the counties, have ever been defined by express statute." *Bd. of Supervisors v. Beveridge*, 16 Ill. 312 (Ill 1855), (quoted in *Scott v. Minnehaha County*, 35 S.D. 447, 450, 152 N.W. 699, 700 (1915)).

3. Webster's Dictionary defines "courthouse" as "[a] building in which established courts are held, or a house appropriated to courts and public meetings." Webster's New Int'l Dictionary 611 (2d ed 1954). Black's Law Dictionary defines "courthouse" as "[t]he building occupied for the public sessions of a court, with its various offices. The building occupied and appropriated according to law for the holding of courts." Black's Law Dictionary 354 (6th ed 1990).

*State,* 86 N.Y.2d 286, 631 N.Y.S.2d 553, 655 N.E.2d 649, 651 (1995), the New York Court of Appeals pointed out that the traditional principle has been that local government corporate entities (i.e., counties, townships and cities) and their officers cannot sue the state. Counties are merely subdivisions of the state created by the state to conveniently carry out the state's governmental functions as the state's agents. As agents, counties cannot contest the actions of their principal, the state. Counties cannot sue their creators. *Id.* at 653. The New York Court also rejected the notion that the city's general authority to "sue and be sued" conferred capacity to sue the state. *Id.* at 653. The court noted that the wrong, if any, must be corrected by the legislature. *Id.* at 654 (citing *Albany County v. Hooker,* 204 N.Y. 1, 97 N.E. 403, 408 (1912)). The New York Court relied on *Trenton v. New Jersey,* 262 U.S. 182, 43 S.Ct. 534, 67 L.Ed. 937 (1923). There the United States Supreme Court held that a city could not sue the state because the city is merely a political subdivision of the state and exists by state legislation. *Id.,* 262 U.S. at 189–90, 43 S.Ct. at 537–38, 67 L.Ed. at 942. The legislature could simply terminate the city and provide a different government where the city is located. *Id.*

[¶ 16.] The State cannot be sued for declaratory relief. Declaratory actions are authorized under SDCL 21–24–3. The statute provides that any *person* whose rights are affected by a statute may obtain a declaration of rights. SDCL 21–24–3. "Person" is defined in SDCL 21–24–2 as "any person, partnership, joint stock company, unincorporated association, or society, or municipal, *public* or other *corporation* of any character whatsoever." (emphasis added). A county is a body corporate with power to sue and be sued. SDCL 7–18–1. Therefore a county may bring a declaratory judgment action, but not against the State. SDCL 21–24–7 provides that "when declaratory relief is sought all *persons* shall be made parties who have or claim any interest which would be affected by the declaration." (emphasis added). *Danforth v. City of Yankton,* 71 S.D. 406, 412, 25 N.W.2d 50, 53 (1946) sets out the jurisdictional requisites for a declaratory judgment action:

(1) There must exist a justiciable controversy; that is to say, a controversy in which a claim of right is asserted against one who has an interest in contesting it; (2) the controversy must be *between persons* whose interest are adverse; (3) the party seeking declaratory relief must have a legal interest in the controversy, that is to say, a legally protectible interest; and (4) the issue involved in the controversy must be ripe for judicial determination.

(emphasis added). Under SDCL 21–24–2, the State does *not* meet the definition of a person because South Dakota is a state, not a person, partnership, joint stock company, unincorporated association, society or a municipal, public or other corporation of any character. Since the State is not a person, the State is not a proper party and the trial court did not have jurisdiction to enter declaratory relief in favor of the county.[4]

---

4. In *Tripp County v. Dep't of Transp.,* 429 N.W.2d 473 (S.D.1988), Tripp County commenced a declaratory judgement action against the Department of Transportation (DOT) in circuit court. The county sought an adjudication that the responsibility for maintaining a highway transferred from the county to DOT by virtue of legislation passed in 1986. The trial court granted summary judgment for DOT, and this Court reversed. However, the jurisdictional requisites of SDCL 21–24–7 and *Danforth* were not raised in *Tripp County,* and jurisdiction was not discussed. Similarly, jurisdiction was not addressed at the trial court

[¶ 17.] The trial court lacked subject matter jurisdiction. Jurisdiction cannot be conferred by consent, agreement, stipulation or waiver. *Weston v. Jones,* 1999 SD 160, ¶ 33, 603 N.W.2d 706, 713 (Sabers, J., dissenting). A judgment without jurisdiction is void. *State v. Neitge,* 2000 SD 37, ¶ 13, 607 N.W.2d 258, 262 (citing *State v. Haase,* 446 N.W.2d 62, 64 (S.D.1989)).

[¶ 18.] In conclusion, Pennington County's remedy is with the legislature, which has the power to authorize the State to rent space from Pennington County and to appropriate money to fund the authorization.[5]

[¶ 19.] The circuit court judgment is vacated and this action is dismissed.

[¶ 20.] GILBERTSON, Chief Justice, and TIMM, Circuit Judge, concur.

[¶ 21.] AMUNDSON, Justice, concurs specially.

[¶ 22.] SABERS, Justice, dissents.

[¶ 23.] TIMM, Circuit Judge, sitting for KONENKAMP, Justice, disqualified.

AMUNDSON, Justice (concurring specially).

[¶ 24.] In its initial complaint Pennington County prays for declaratory judgment stating that "Pennington County has no legal obligation to pay for or provide, at its own expense, an office and facilities for the Seventh Judicial Circuit Court Services." Despite the County's contention that its request is in the form of equitable relief, its prayer is, in essence, a request for money/rent damages.

[¶ 25.] Counties are "creatures of the Legislature; they exist by reason of statutes enacted within the power of the Legislature. . . . The creature is not greater than its creator, and may not question that power which brought it into existence and set the bounds of its capacities." *Edgemont Sch. Dist. v. S.D. Dept. of Revenue,* et al., 1999 SD 48, ¶ 15, 593 N.W.2d 36, 40 (citation omitted). The power of the Legislature to control this issue is "unrestrained" because counties "are not sovereign entities[,]" but are rather "[p]olitical subdivisions of states." *See id.* at ¶ 14. As a creature existing only because the State created it, Pennington County has no authority to sue the sovereign/State. No matter who is named in the caption of a case as a defendant, the UJS and its employees are just one part of the sovereign/State.

[¶ 26.] Therefore, I agree with the majority opinion's ultimate result; there is no question that Pennington County should go through the legislative process for the appropriation of funds to pay for any rent entitlement.

[¶ 27.] I further agree that the judiciary has the inherent power to administer the operation of the courts in doing the

---

level in this case. Nevertheless, this Court may raise issues of jurisdiction *sua sponte. Weins,* 2000 SD 10 at ¶ 8, 605 N.W.2d at 490; *Bohlmann v. Lindquist,* 1997 SD 42 at ¶ 10, 562 N.W.2d at 580; *Phipps,* 406 N.W.2d at 148. In fact, this Court has even said that we are "required *sua sponte* to take note of jurisdictional deficiencies, whether presented by the parties or not. . . ." *Decker v. Tschetter Hutterian Brethren,* 1999 SD 62, ¶ 14, 594 N.W.2d 357, 362.

5. State money can only be spent by appropriation. SDCL 4–8–1. A State official paying for space without both authority of law and an appropriation would be personally and criminally liable. SDCL 4–8–2, –3. No law authorizes the State to rent space for circuit courts or court services and no appropriation has been made to rent space. Even if there was authority, it would still be illegal for State officials to pay for the space without an appropriation. SDCL 4–8–4.

people's business. In the case of *In re Integration of Neb. State Bar Assoc.*, 133 Neb. 283, 275 N.W. 265, 267 (1937), the Nebraska Supreme Court defined inherent power as follows: "The term 'inherent power of the judiciary' means that which is essential to the existence, dignity and functions of the court from the very fact that it is a court." The creature created in this case is attempting to take over a function of the court, namely telling the court and its staff that efficiency and location of operation means nothing. The court does not control what is filed by the citizens of Pennington County, or law enforcement of Pennington County, or the legal profession in Pennington County, but the court is required to administer justice in deciding legal disputes filed within it. In this case, the 7th Circuit judges have testified that the location of the staff as presently provided is needed.

SABERS, Justice (dissenting).

[¶ 28.] I dissent because the majority opinion goes out of its way to be inconsistent and partially wrong. Footnote 4 correctly provides that "this Court may raise issues of jurisdiction *sua sponte.*" We may raise jurisdiction sua sponte, but we don't have to.

[¶ 29.] If the jurisdiction question is reached by this Court *sua sponte,* we have no authority to say anything other than that there is no jurisdiction. If we were to follow the actual holding of the majority opinion, the bulk of the opinion becomes mere *dicta,* including paragraphs 5 and 7–16.

[¶ 30.] We have jurisdiction under *Tripp County v. Department of Transportation* to at least state that we have authority to affirm the trial court in the denial of relief to the County. 429 N.W.2d 473 (S.D.1988). In addition, we should point out that the County needs to go to the Legislature if it needs funds or reimbursement for items supplied to the Judicial Branch. I would also point out that the required space need not be in the courthouse as long as it is reasonably close.

[¶ 31.] These questions need to be answered and should be and, in my opinion, can be under the authority of the *Tripp County* case.