LINCOLN COUNTY, South Dakota, and
Delapre Township, Plaintiffs
and Appellants,

v.

Arthur B. JOHNSON and Violet V. Johnson, Sioux Falls Development Foundation, Incorporated, and City of Sioux Falls, a Municipal Corporation, Defendants and Respondents.

No. 12091.

Supreme Court of South Dakota.

Argued June 7, 1977.

Decided Aug. 30, 1977.

Richard E. Bogue, Canton, State's Atty., for plaintiff and appellant, Lincoln County.

Sam W. Masten and Jeff Masten, Canton, for plaintiff and appellant, Delapre Township.

Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for defendant and respondent, Sioux Falls Development Foundation, Inc.

Schiager, Schiager & Sechser, and Woods, Fuller, Schultz & Smith, Sioux Falls, for defendant and respondent, City of Sioux Falls.

Warren Neufeld, Asst. Atty. Gen., Pierre, for amicus curiae; William J. Janklow, Atty. Gen., Pierre, on the brief.

MORGAN, Justice.

These actions arise from an attempt by the city of Sioux Falls, Minnehaha County, South Dakota, to locate a sanitary landfill in Delapre Township, Lincoln County, South Dakota, at a site some nine miles southwest of the city without attempting in any manner to comply with or obtain necessary variances or amendments to the Lincoln County Zoning Ordinance or the township bylaw. The Circuit Court of the Second Judicial Circuit, then for Lincoln County, sustained the city's right and granted summary relief against both the county's and the township's restraining orders. We reverse as to the county and affirm as to the township, however for a different reason.

The history of the case discloses that the land in question (hereinafter site) was owned by the Defendant Johnsons and was part of a larger tract sold at public auction to the Defendant Sioux Falls Development Foundation, Inc. (Foundation). A contract for deed for the sale of the land was entered into on April 3, 1975. The site, located in Delapre Township, Lincoln County, South Dakota, some nine miles southwest of the city, over four miles from the city's corporate limits, was zoned "A" RURAL AND PUBLIC USE under Lincoln County's zoning ordinance. On July 1, 1975, the Foundation assigned the site portion of the tract to the city of Sioux Falls, (city) and quit claimed the same to the city on October 23, 1975.

Lincoln County (county) commenced an action against the Johnsons and the Foundation on October 20, 1975, seeking injunctive relief and alleging violation of the county zoning ordinance and the court issued a temporary restraining order. At a hearing on October 27, 1975, the city was joined as a party-defendant and agreed to continuing the restraining order until a final hearing on the case.

Delapre Township (township) commenced its action on February 26, 1976, against the city, Foundation and the Johnsons seeking a temporary restraining order and preliminary injunction alleging failure to comply with township By-Law No. 2 which prevents the construction or maintenance of a sanitary landfill, dump, or other like facility within the township unless the ordinance is complied with. The ordinance had been adopted in August of 1975. No temporary restraining order or preliminary injunction was issued at that time.

Collaterally, during the period of April 11, 1975 through March 4, 1976, the city initiated proceedings before the South Dakota Department of Environmental Protection (Department) to use the site for solid waste disposal. The Department issued a tentative decision and proposed permit and recommendations that the permit be granted and scheduled a contested hearing before the Board of Environmental Protection (Board) on March 4, 1976, at which hearing appearances were made for the Department, the city, the county, and the township.

The Board adopted the position that its quasi-judicial authority extends only to the approval, denial, revocation or modification of solid waste and disposal permits, based on the suitability of the site with regard to disposal criteria, such as danger to water quality, the proximity of the site to highways and public parks, and also to operational factors including operational methods, site improvements necessary to proper operation, and proper closure. The decision of the Board granting the permit supported by its findings of fact and conclusions of law was entered on the 26th day of May, 1976. This decision was appealed to the circuit court for Lincoln County, then in the Second Judicial Circuit, now in the First Judicial Circuit. At the time of oral arguments no decision had been received but we note in the June 15, 1977 edition of the Argus Leader, a Sioux Falls paper, the circuit court has since affirmed the decision of the Board.

On May 21, 1976, the Attorney General on behalf of the South Dakota Department of Environmental Protection (Department) moved for leave to appear as amicus curiae in both actions purportedly to support the position of the city insofar as the issues

involved the ability of the Department to enforce and implement the requirements of SDCL 34–16B, the Solid Waste Act. The township resisted this motion but the county did not.

On June 3, 1976, the township filed a motion for preliminary injunction supported by the affidavit of the chairman of the board of supervisors. At the same time the township filed a motion for consolidation of the actions, which motion was joined in by the county. An order consolidating the actions was entered on the 14th day of June, 1976. On that same date the defendant city filed and served a motion for summary judgment in each of the cases. On July 9, 1976, the trial court entered its order granting the state's motion to appear as amicus curiae.

The trial court entered its memorandum decision on October 21, 1976, and entered summary judgment in favor of the defendant city and against both the county and the township on November 2, 1976.

In examining the statutory authority upon which the respective governmental entities rely we find the city relying heavily upon SDCL 9–12–1(2) which is the grant of power to the municipality to acquire property by eminent domain within or without the corporate limits.[1] SDCL 34–16B–25 authorizes municipalities to acquire by eminent domain or otherwise real or personal property necessary to the installation and operation of a solid waste management system.[2] The latter section is a part of the Solid Waste Disposal Act, now Chapter 34–16B SDCL, which declares it to be the public policy of the state to regulate and control the handling of solid waste in a manner that will protect the public health and safety, conserve our natural resources, enhance the beauty and quality of our environment, prevent air pollution or water pollution, and prevent the spread of disease and creation of nuisances. The purpose of the chapter is:

> "[T]o provide for a co-ordinated state-wide program of solid waste management, for an appropriate distribution of responsibilities among the state and local units of government, and to facilitate co-operation with federal, state, and local agencies responsible for the prevention, control, or abatement of air, water, and land pollution."[3]

This act, as amended, now vests in the Department of Environmental Protection acting by and through the Board of Environmental Protection the power to adopt and promulgate rules, regulations and standards for the collection, transportation, processing, resource recovery and disposal of solid wastes. Section 4 of the chapter further provides:

---

1. SDCL 9–12–1:
   " * * *
   (2) To acquire by lease, purchase, gift, condemnation, or other lawful means and hold in its corporate name or use and control as provided by law both real and personal property and easements and rights of way within or without the corporate limits for all purposes authorized by law or necessary to the exercise of any power granted;"

2. SDCL 34–16B–25 provides in part:
   "Municipalities are authorized to acquire by gift, devise, lease, purchase, or eminent domain real or personal property necessary to the installation and operation of a solid waste management system either individually or as a party to a regional or county solid waste authority. * * * "

3. SDCL 34–16B–1:
   "It is hereby declared to be the public policy of the state to regulate and control the collec-

   tion, transportation, processing, resource recovery, and disposal of solid wastes in a manner that will protect the public health and safety, conserve our natural resources, enhance the beauty and quality of our environment, prevent air pollution or water pollution, and prevent the spread of disease and creation of nuisances. It is also declared that local and regional solid waste management systems be supported to the extent practicable for the efficient and economical development of such systems. To these ends it is the purpose of this chapter to provide for a co-ordinated state-wide program of solid waste management, for an appropriate distribution of responsibilities among the state and local units of government, and to facilitate co-operation with federal, state, and local agencies responsible for the prevention, control, or abatement of air, water, and land pollution."

"Such rules and regulations shall include, but not be limited to, the disposal site location, construction, operation, compliance deadlines, and maintenance of the disposal or disposal process as necessary to implement the purpose and intent of this chapter. Rules and regulations authorized under the provisions herein shall be promulgated and adopted in compliance with chapter 1–26."

While the statute mentions rules and regulations regarding *the disposal site location*, the Board, as previously noted, eschewed jurisdiction over areas such as collection, transportation, processing, and resource recovery, imposition or agreement between political subdivisions, determination of violation of zoning ordinances and making compliance a prerequisite to obtaining a permit, in short, the substantive issues raised by the pleadings of the county and the township in these cases.

Planning and zoning in South Dakota are governed by the provisions of Title 11, SDCL, Chapter 11–2 the Rights to County Planning and Zoning, Chapter 11–4 Municipal Planning and Zoning, and Chapter 11–6 Comprehensive City Planning. Under the statutory scheme found under Title 11 the city has comprehensive planning powers within its corporate limits and can also zone all property within three miles in all directions beyond its corporate limits, not located in any other municipality concurrently with the county zoning commission. Beyond that extraterritorial limitation the zoning falls to the county zoning commission. There is no question but what the site under consideration lies outside the extraterritorial jurisdiction of the City of Sioux Falls.

If the legislature had specifically provided that a municipality could locate waste disposal facilities in any location it wished without regard to local zoning or if there was a law which required the municipality to respect local zoning in its selection of sites, such legislative declaration would control. As it turns out there is no legislative guidance either way.[4] We hesitate to suggest that there is a presumption running in either direction. In the absence of such a statement or of a presumption we must look to other criteria in order to reach a decision.

The city contended and the trial court agreed that the city's power of eminent domain was superior to the county's zoning power. This was in accordance with the so-called "general rule" of exemption that has gained some ascendency and holds that zoning ordinances are inapplicable to governmental projects for the construction of which the agency in question has the power to condemn or appropriate land by the power of eminent domain. The jurisdictions supporting this view have at least tacitly reasoned that the power of eminent domain is superior to the zoning power and that a political subdivision with mere zoning authority should not be permitted to prevent or place limitations upon a public use of property in the furtherance of which a governmental entity has been clothed with condemnation power by the state legislature.[5] The rationale is that eminent domain is a natural power of the sovereign limited only by constitutional provisions, whereas the police powers which are the source of zoning authority arise from constitutional grant and statutory enactment.[6]

This rule holds that the mere grant of eminent domain power to a governmental unit automatically renders the unit immune from zoning regulations. See *Seward County Board of Commissioners et al. v. City of Seward, Nebraska, A Municipal Corporation* (1976), 196 Neb. 266, 242 N.W.2d 849. *Askew v. Kopp*, (Mo.1960), 330 S.W.2d

4. A review of the pertinent chapters in Title 11, namely, chapters 11–2, 11–4 and 11–6 relating to county, municipal and comprehensive city planning does not disclose any exemptions nor do the provisions of SDCL 9–12–1(2), the city's general power to acquire property by condemnation, nor the provisions of chapter 34–16B, the Solid Waste Management Act, expressly suspend the applicability of zoning regulations.

5. *City of Scottsdale v. Municipal Court of Tempe*, 90 Ariz. 393, 368 P.2d 637 (1962).

6. Id. at 396, 397, 368 P.2d at 638, 639.

882, is a leading case on this theory and also on the theory that even though the city acquired the property through private negotiations rather than the exercise of eminent domain power the fact that the city had the right to condemn was the consideration. However, two years later the Missouri Supreme Court modified the rule in *St. Louis County v. City of Manchester,* (1962), 360 S.W.2d 638, when it held that while the city had the right to acquire property by eminent domain it had not been specifically authorized by statute to select the exact location of a sewage plant in disregard of the county's zoning ordinance. Thus it would appear that reasoned adjudication redirected the judicial inquiry to a consideration of the nature of the political and geographical context of the use rather than a mere consideration of the manner of acquisition.

We find that this trend toward limitation of such freedom from regulation, is well within the dictates of the public interest, principally because the pungent realities of urban sprawl and overpopulation have accentuated the need for land use planning and control that serves as foundation for the exercise of police power in the area of zoning.[7]

Many jurisdictions have watered down the so-called "general rule" by application of the governmental vs. proprietary test; that is, when the institutional use is governmental the political unit performing such function is immune from conflicting zoning ordinances, however when proprietary the zoning ordinances prevail. The problem is that the classification of a particular function may vary from jurisdiction to jurisdiction. Dissatisfaction with the distinction was illustrated by the opinion of the Supreme Court of the State of New Jersey which concluded "the [governmental—proprietary] distinction is illusory; whatever local government is authorized to do consti-

tutes a function of government, and when a municipality acts pursuant to granted authority it acts as a government and not as a private entrepreneur."[8]

Another modification of the general rule is exemplified in the case of *St. Louis County v. City of Manchester, supra,* wherein the Manchester court suggests that the *scope* of political authority of a governmental unit seeking the exemption is a significant factor in determining whether immunity from local zoning regulations should be granted. The reasoning is that state agencies such as public utility commissions or state highway authorities have a political jurisdiction and a concomitant planning responsibility statewide in scope transcending local boundaries. To be compelled to comply with local zoning regulations might well thwart the state agency's attempt to perform its public service function. Such a rule would not be applicable to the instant case however, as there is no state agency or authority of that nature and scope involved and we leave the acceptability of that test for another day under proper circumstances.[9]

We hold that the better rule, the rule allowing for the greatest flexibility and fairness, is the newly emerging "balancing of interests" rule. This rule requires that one governmental unit (intruding unit) be bound by the zoning regulations of another governmental unit (host unit) in the use of its extraterritorial property purchased or condemned, in the absence of specific legislative authority to the contrary. If the proposed use is nonconforming the intruding unit should apply to the host unit's zoning authority for a specific exception or for a change in zoning, whichever is appropriate. The host zoning authority is then in a position to consider and weigh the applicant's need for the use in question and its effect upon the host unit's zoning plan, neighboring property,

---

7. *Town of Oronoco v. City of Rochester, Minnesota,* 293 Minn. 468, 197 N.W.2d 426, 429 (1972).

8. *Township of Washington v. Village of Ridgewood* (1958), 26 N.J. 578, 141 A.2d 308.

9. For an excellent analysis of the foregoing rules we recommend the article in 84 Harvard Law Review 869 (1971).

environmental impact, and the myriad other relevant factors to be considered for modern land use planning and control. If the intruding unit is dissatisfied with the decision of the host zoning authority it may seek appropriate judicial review,[10] wherein the circuit court can balance the competing public and private interests essential to an equitable resolution of the conflict. In addition to the zoning factors considered by the host authority the trial court can consider the applicant's legislative grant of authority, the public need therefor, alternative locations in less restrictive zoning areas and alternative methods for providing the needed improvements. If, after weighing all pertinent factors the court finds the host government is acting unreasonably, the zoning ordinance should be held inapplicable to the proposed improvement.[11] The factors to be considered are obviously not limited to those considered by the Board of Environmental Protection in passing on the city's application for the permit to operate a solid waste disposal site.

The office of the Attorney General appearing in the role of amicus curiae in both their written brief and in oral argument urged the adoption of the balancing of interests rule.

We therefore hold with respect to the summary judgment against the county that the judgment be reversed and remanded to the trial court with instructions to enter a permanent restraining order against the city restraining the construction and operation of a sanitary landfill in Lincoln County until the city makes application and the parties conform to the procedures outlined above. By this decision we do not presume to adjudicate the feasibility of the site in question.

We commend to the contending parties and their respective government bodies the statement of the court in the *City of Temple Terrace v. Hillsborough Association for Retarded Citizens, Inc.*, when the court stated that:

"Our burgeoning population and the rapidly diminishing available land make it all the more important that the use of land be intelligently controlled. This can only be done by a cooperative effort between interested parties who approach their differences with an open mind and with respect for the objectives of the other. When the state legislature is silent on the subject, the governmental unit seeking to use land contrary to applicable zoning regulations should have the burden of proving that the public interests favoring the proposed use outweigh those mitigating against a use not sanctioned by the zoning regulations of the host government." [12]

With respect to the lawsuit by the Delapre Township we note that the township is located in the northwestern section of Lincoln County, within four miles of the City of Sioux Falls. Under the regulatory powers granted to this township by SDCL 8–2–9(1), which applies to townships within four miles of a city of fifty thousand or more, Delapre Township has the power to regulate the depositing of garbage, ashes, offal, or any other offensive matter which might endanger the health of its inhabitants. However, the regulatory powers are "subordinate to any zoning or other powers of the county or adjoining city when such powers are, or shall be, exercised by said county or city in respect to said township." [13] Pursuant to this statutory

---

10. Subject to the provisions [in this case] of SDCL 7–8–27 and 7–8–30.

11. *Orange County v. City of Apopka*, Fla.App., 299 So.2d 652, 655.

12. *City of Temple Terrace et al. v. Hillsborough Ass'n for Retarded Citizens, Inc.*, Fla.App. (1975), 322 So.2d 571, 579.

13. SDCL 8–2–9:
"Each organized township in the state has power, when a city with a population of fifty

thousand or more is within four miles of the township:
(1) To regulate the depositing of garbage, ashes, offal, or any offensive matter which might endanger the health of its inhabitants;

\* \* \* \* \* \*

The powers as provided in this section shall be subordinate to any zoning or other powers of the county or adjoining city when such powers are, or shall be, exercised by said county or city in respect to said township."

grant, Delapre Township enacted By-Law No. 2 for the purpose of promoting the health, safety, morals and general welfare of the township. This bylaw required that before any organized foreign entity could deposit ashes, offal, or any offensive matter of any kind within the boundaries of Delapre Township there had to be an election in which a majority of the voters granted the entity their approval. It was also required by the bylaw that a permit had to be obtained from the township board by submitting a written application. The applicant had to show the dimensions and shape of the area to be used and provide the information required by the Board of Environmental Protection. Since the city failed to apply for a permit the township argued the municipality was thereby prohibited from constructing a sanitary landfill in their township.

We hold however, that, inasmuch as the county has enacted a comprehensive zoning plan in compliance with SDCL 11–2–11, the county's comprehensive plan preempts the authority of the township ordinance under the language contained in SDCL 8–2–9 set out above. This interpretation is necessary to insure that a township does not unreasonably thwart the county's attempt to comply with the comprehensive planning and zoning requirements. The township is protected to the extent of its input into the comprehensive plan of the county of which it is an integral part. We therefore affirm the judgment against the township although for a different reason than that advanced by the trial court.

All the Justices concur.

WINANS, Retired Justice, sitting for DUNN, Chief Justice, disqualified.