1999 SD 73

**Jeremiah WELSH, Plaintiff and Appellee,**

v.

**CENTERVILLE TOWNSHIP, Defendant and Appellant.**

No. 20593.

Supreme Court of South Dakota.

Argued March 23, 1999.

Decided June 23, 1999.

Mark V. Meierhenry, Danforth, Meierhenry & Meierhenry, Sioux Falls, for plaintiff and appellee.

James G. Abourezk, Sioux Falls, for defendant and appellant.

John H. Davidson, Vermillion, for Amicus Curiae SD Ass'n of Towns and Townships.

Jerome B. Lammers, Lammers, Lammers & Kleibacker, Madison, for Amicus Curiae South Dakota Pork Producers.

GILBERTSON, Justice

[¶ 1.] Landowner brought suit to enjoin Township from enforcing a Township ordinance designed to regulate the construction of commercial feedlots within the Township. Both parties filed cross motions for summary judgment. The circuit court, First Judicial Circuit, granted the landowner's motion for summary judgment finding the Township did not have, pursuant to its general authorization under SDCL 8-2-1(4), the power to zone. The trial court also found the ordinance passed by the Township was void and of no effect upon the landowner. The Township appeals. Based on the facts of this case, we affirm.

**FACTS AND PROCEDURE**

[¶ 2.] Centerville Township (Township) is an organized township located within Turner County, South Dakota. On January 25, 1998, the Township's Board of Supervisors enacted an ordinance regulating, among other things, the size and location of commercial feedlots.

[¶ 3.] Jeremiah Welsh (Welsh) announced his intent to establish a concentrated hog feeding operation on his property located within the Township. He wanted to build a 41 foot by 408 foot barn with an eight foot concrete pit with a manure capacity of 848,109 gallons, for the feeding of approximately 5,400 hogs per year. The building would be composed of a wood frame with a steel covering. The

hog barn is to be located approximately 1,850 feet from the nearest home. Two other homes are located within 2,240 feet and 3,490 feet from the proposed hog barn. The barn will be located within 1,025 feet of 292nd Avenue and less than 100 feet from 460th Avenue, two Township roads. Under the Township's ordinance, this operation would be considered a commercial feedlot and Welsh would have to apply for a special exception to build and operate the feedlot.

[¶ 4.] On February 10, 1998, Welsh applied for and was approved for a conditional use permit from the Turner County Planning and Zoning Commission for this facility. The Turner County approval was conditioned on his compliance with the State's manure plan, an agreement not to spread manure near Centerville and to plant a shelterbelt of trees. Welsh also applied for a General Permit for a large-scale animal-feeding unit from the State of South Dakota Department of Environment and Natural Resources. At oral argument we were informed Welsh has been issued the requisite State permit.

[¶ 5.] Although the ordinance required it, Welsh never formally or informally applied for a permit from the Township. After his successful hearing before the Turner County Planning and Zoning Committee, the Township sent Welsh a letter advising him the Township ordinance would be enforced against him. If he failed to follow the ordinance he would be assessed fines in the amount of $10,000 per day. Welsh filed suit for a writ of prohibition to enjoin Centerville Township from prohibiting his commercial feeding operation. Both parties filed motions for summary judgment. The trial court entered judgment in favor of Welsh, finding the Township did not, pursuant to its general authorization under SDCL 8–2–1(4), have the authority to zone. The trial court found the ordinance passed by the Township was void and of no effect upon Welsh.

[¶ 6.] The Township appeals raising the following issue:

**Whether Centerville Township has the power, under SDCL 8–2–1(4), to regulate a commercial feedlot operation within the boundaries of the Township.**

## STANDARD OF REVIEW

[¶ 7.] Our standard of review for interpretation of a statute is well settled. A question of statutory interpretation is a question of law and as such is reviewed de novo. *Maynard v. Heeren*, 1997 SD 60, ¶ 5, 563 N.W.2d 830, 833 (citing *Weisbeck v. Hess*, 524 N.W.2d 363, 364–5 (S.D.1994); *see also Delzer v. Penn*, 534 N.W.2d 58, 61 (S.D.1995) ("statute construction is question of law fully reviewable")). "We interpret statutes in accord with legislative intent." *McIntyre v. Wick*, 1996 SD 147, ¶ 51, 558 N.W.2d 347, 362 (citing *Fall River County v. South Dakota Dept. of Revenue*, 1996 SD 106, ¶ 13, 552 N.W.2d 620, 624.).

## ANALYSIS AND DECISION

[¶ 8.] **Whether Centerville Township has the power, under SDCL 8–2–1(4), to regulate a commercial feedlot operation within the boundaries of the Township.**

[¶ 9.] This case hinges on whether SDCL 8–2–1(4) expressly authorizes the Township to regulate a commercial feedlot. The statute provides:

Each organized township in the state is a body corporate and has power:

(1) To sue and be sued;

(2) To acquire, by purchase, condemnation, or other lawful means, real property within or without the limits of the township, necessary or convenient for township purposes, or for the exercise of the powers granted to the township;

(3) To make such contracts and purchase and hold such personal property as may be necessary for the exercise of its corporate or administrative powers or for the protection of the property of its inhabitants, including the purchase of

or contracting for fire-fighting equipment or protection;

(4) *To pass bylaws or ordinances for the government of such township and for the protection of the lives and property of its inhabitants,* and to enforce the same in its corporate name before any magistrate;

(5) To make such orders for the disposition, regulation, or use of its corporate property as may be deemed by the board of supervisors conducive to the best interests of the inhabitants.

SDCL 8-2-1. (Emphasis added). We find the Township does not have this power under SDCL 8-2-1(4) for the reasons that follow.[1]

 [¶ 10.] We have said, a "township is a political subdivision of state government and like counties and municipalities, its right to act is dependent upon a grant from the state." Breckweg v. Knochenmus, 81 S.D. 244, 252, 133 N.W.2d 860, 864 (1965). Townships have no inherent or constitutionally granted police powers. "It only has such powers as are expressly delegated by the state or are necessarily implied from expressly delegated powers." *Id.* "[Townships] have been denominated 'quasicorporations,' and their whole capacities, powers, and duties are derived from legislative enactments." *Van Antwerp v. Dell Rapids Township of Minnehaha County,* 5 S.D. 447, 451, 59 N.W. 209, 210 (1894). SDCL 8-2-10 reiterates the precept a township's powers are restricted to those expressly granted or necessary to exercise the granted powers. It provides:

No organized township shall possess or exercise any powers except such as are enumerated in this chapter, or are especially given by law or are neces-

---

**1.** Welsh claims Centerville Township was not granted the power under SDCL 8-2-1(4) to regulate his commercial feedlot, via a township ordinance. Although the Ordinance is central to this case, a copy of the Centerville Township Ordinance was not included in the record. This Court has stated a number of times:

Absent statutory authorization, courts of general jurisdiction, such as our circuit courts, may not take judicial notice of municipal ordinances. An ordinance therefore must be introduced into evidence and be made part of the record.

*Nase v. Christensen,* 409 N.W.2d 131, 132 (S.D.1987) (footnote and internal citation omitted). A proper evidentiary objection by Welsh would have resulted in the Township being nonsuited on this procedural point. As there is no objection by Welsh, we will examine the copy of the Ordinance attached to the Township's brief.

The Ordinance provides in part:

Be it enacted by the Township Board of Centerville Township, Turner County, South Dakota.

Section I. Establishing an Agricultural District.

The intent of the agricultural district is to protect agricultural lands and residences and other lands consisting of natural vegetation from incompatible land uses of residential, commercial or industrial expansion, so as to preserve a secure land base which can best allow farmers to make the large capital investments necessary to continue the agricultural use of the land thereby maintaining the very important agricultural economy of the region. The Centerville Township Board hereby establishes an Agricultural District encompassing the territory within the boundaries of Centerville Township, Turner County, South Dakota.

The following principal uses and structures shall be permitted in the Agricultural District:

1. A farm operation involving any form of agricultural [*sic*] including the raising of crops, horticulture, nurseries, animal husbandry, poultry husbandry, fur farms and farm feed lots[.]

* * *

After the provisions of this By Law relating to special exceptions have been fulfilled, the Centerville Township Board may permit, after application and hearing, as special exception in the Agricultural District:

1. Commercial feed lots[.]

Under this Ordinance a Commercial feed lot is defined as:

A commercial fidelity is a place where the principal business is the feeding of livestock and such feeding is not done as a subordinate activity to the production of crops on the premises of which the fidelity is a part. Any fidelity where the main source of feed for the livestock is produced off the premises of the farm on which such livestock are being fed shall be considered a commercial facility.

sary to the exercise of the powers so enumerated or granted.

Thus, the authority to zone or regulate in some other manner must be an express grant of authority to a township by the Legislature.

[¶ 11.] To determine what statutory power the Township is granted by the Legislature, we must look to the "plain, ordinary and popular meaning of the statutory language." *Fall River County*, 1996 SD 106 at ¶ 13, 552 N.W.2d at 624. We must assume the Legislature meant what the statute said and give the "words and phrases a plain meaning and effect." *McIntyre*, 1996 SD 147 at ¶ 51, 558 N.W.2d at 362. A township's powers will be strictly construed. *Van Antwerp*, 5 S.D. at 451, 59 N.W. at 210.

[¶ 12.] The Township argues that SDCL 8-2-1(4) sanctions its ordinance since the ordinance is for "the protection of lives and property of its inhabitants." Welsh claims the Township is attempting to zone by the enactment of this ordinance. He points out that under SDCL ch 11, zoning is the sole province of the counties. Township and the Amici for the South Dakota Association of Towns and Townships, argue Township is not attempting to zone, but instead using police power under SDCL 8-2-1(4) to: 1) abate a nuisance; 2) protect the property value of the surrounding neighbors; or 3) protect the water from potential pollution. They argue this ordinance is in turn "protecting the lives and property of its inhabitants" and therefore permissible.

[¶ 13.] SDCL 11-2-1(10) defines a "zoning ordinance" as:

"Zoning ordinance," the ordinance adopted by the board to regulate by districts or zones the location, height, bulk, and size of buildings and other structures, and accessory uses, percentage of lot which may be occupied, the size of lots, courts, and other open spaces, the density and distribution of population, the location and use of buildings, and structures for trade, advertising uses, industry, residence, recreation, public activities, or other purposes, and, the uses of land for trade, industry, recreation, or other purposes.

*See also* SDCL 11-6-1(11). Based on this definition, the argument that the Township ordinance is not a zoning ordinance, is untenable. Thus, the remaining issue is whether the Township has the authority to enact this "zoning ordinance."

[¶ 14.] Townships do have the power to zone in limited instances that are not applicable here. SDCL 8-2-9 grants townships the power to zone only when a municipality of fifty thousand or more is within four miles of the township. Had the Legislature granted all townships the power to zone under SDCL 8-2-1(4), then there would have been no need to enact SDCL 8-2-9 or SDCL 8-2-8.[2] The Township argues that SDCL 8-2-9 and 8-2-8 are but limited restrictions on the general authority of a township to zone rather than a limited grant of authority to zone. Given the fact that by statute and case law townships cannot exercise any powers not expressly granted them, this argument of implied authority to zone cannot be accepted.

[¶ 15.] Furthermore, allowing a township to enact zoning legislation would defeat the purpose of comprehensive county zoning plans under SDCL ch 11-2.[3] In this chap-

---

**2.** Even under the authority granted, townships who fall within the requirements of SDCL 8-2-9 have the following limitation:
The powers as provided in this section shall be subordinate to any zoning or other powers of the county or adjoining municipality when such powers are, or shall be, exercised by said county or municipality in respect to said township.

SDCL 8-2-8 is limited to those townships with an unincorporated town within its limits.

**3.** Since Territorial Days, counties have been granted general powers (*see* SDCL 7-8-20) similar to the powers of townships under SDCL 8-2-1(4). Yet when the Legislature gave the counties the power to zone, the Leg-

ter the Legislature intended for a county's zoning plan to provide for the protection and guidance of "physical, social, economic, and environmental development of the county." Under SDCL 11–2–36, the Legislature has granted the board of county commissioners the power to:

> [A]dopt zoning ordinances, resolutions or regulations designating or limiting the location, height, bulk, number of stories, size of, and the specific uses for which dwellings, buildings and structures ...; [provide] sanitary, safety and protective measures that shall be required....

Under SDCL 11–4–1[4] municipalities are also granted the regulatory power to zone.[5] This argument is strengthened by the fact in other statutes the Legislature does grant townships express powers and details the acts a township may undergo.[6] Under the facts of this case, to allow a township pursuant to SDCL 8–2–1(4) and a county to both regulate commercial feed-

islature felt additional specific authorization was needed. *See* SDCL 11–2–36.

4. SDCL 11–4–1 reads:
 For the purpose of promoting health, safety, morals, or the general welfare of the community the governing body of any municipality is hereby empowered to regulate and restrict the height, number of stories, and size of buildings and other structures, the percentage of lots that may be occupied, the size of the yards, courts, and other open spaces, the density of population, and the location and use of buildings, structures, and land for trade, industry, residence, flood plain, or other purposes.

5. Like counties and townships, municipalities have always been granted general powers by the Legislature. *See* SDCL 9–12–1. Yet when municipalities were granted the authority to zone, the Legislature felt it necessary to enact specific authorization (SDCL 11–4–1) rather than rely on the general municipal powers of SDCL 9–12–1.

6. *See* SDCL 8–2–1 (township has power to condemn property, make contracts, purchase or contract for fire-fighting equipment or protection); 8–2–8 (township has the power to regulate the laying of sidewalks and crosswalks, regulate garbage, ashes, offal and other offensive matter).

lots may produce conflicting laws and inconsistent results.[7]

[¶ 16.] In *Lincoln County v. Johnson,* 257 N.W.2d 453 (S.D.1977) we examined this issue. In *Lincoln County,* the city of Sioux Falls attempted to locate a sanitary landfill nine miles from the city in Delapre Township, Lincoln County, South Dakota. *Id.* at 454. Sioux Falls did not attempt to comply with or obtain the necessary variances under the Lincoln County Zoning Ordinance or the township by-law. *Id.* The land was zoned RURAL AND PUBLIC USE by the Lincoln County Zoning Ordinance. *Id.* Delapre Township commenced an action for injunctive relief for the failure of the city to comply with a township ordinance. *Id.* The county also filed for injunctive relief alleging a violation of the county zoning ordinance. *Id.* During this period the city applied for and received a permit from the South Dakota Department of Environmental Protection.

7. The Legislature has proved a mechanism to control when regulations pursuant to other statutory powers and a zoning ordinance under Chapter 11 come into conflict.

> Whenever the regulations made under authority of this chapter require a greater width or size of yards, courts, or other open spaces, or require a lower height of building or less number of stories, or require a greater percentage of lot to be left unoccupied, or impose other higher standards than are required in any other statute or local ordinance or regulation, the provisions of the regulations made under authority of this chapter shall govern.
> Wherever the provisions of any other statute or local ordinance or regulation require a greater width or size of yards, courts, or other open spaces, or require a lower height of building or a less number of stories, or other higher standards than are required by the regulations made under authority of this chapter, the provisions of such statute or local ordinance or regulation shall govern.

SDCL 11–4–6. This does not apply to the Township, as it does not have express power under SDCL 8–2–1(4) under the factual setting before us to regulate by zoning, commercial feedlots.

*Id.* The city claimed it had the authority to locate the landfill without approval from the township or county. *Id.* at 455. It claimed its power was derived from SDCL 9–12–1(2) which was a grant of power for a municipality to acquire property by eminent domain outside of the corporate limits. *Id.* Another statute, SDCL 34–16B–25, authorized the city to obtain property through eminent domain for the operation of a solid waste management system. *Id.* The trial court entered summary judgment in favor of the city against the county and township.

[¶ 17.] After finding the city must conform to the procedures outlined in the County Zoning Ordinance, we went on to address the Township issue. *Id.* at 458. We noted that the Delapre Township was located within four miles of the city. *Id.* Therefore, under SDCL 8–2–9(1), the Township had the authority to regulate a landfill. *Id.* Yet the Township's regulatory powers were subordinate to the powers of the county under the statute when the county exercised its power in respect to the township.[8] *Id.* We held:

> [I]nasmuch as the county has enacted a comprehensive zoning plan in compliance with SDCL 11–2–11, the county's comprehensive plan preempts the authority of the township ordinance under the language contained in SDCL 8–2–9 set out above. This interpretation is necessary to insure that a township does not unreasonably thwart the county's attempt to comply with the comprehensive planning and zoning requirements. The township is protected to the extent of its input into the comprehensive plan of the county of which it is an integral part.

*Id.* at 459.

8. SDCL 8–2–9 states:

> Each organized township in the state has power, when a municipality with a population of fifty thousand or more is within four miles of the township:
> (1) To regulate the depositing of garbage, ashes, offal, or any offensive matter which might endanger the health of its inhabitants;
> (2) To compel any privy, sewer or cesspool maintained in such a manner as not to be offensive or endanger the health of any persons in the township;
> (3) To prevent the pollution of or any injury to any water supply;
> (4) To do what may be necessary or expedient for the promotion of health or the suppression of disease;
> (5) To regulate the moving of any house or building into, within, or out of the township, and to prevent the moving into the township of any house or building of dangerous construction or condition, and to require that a license or permit shall first be obtained from the board of township supervisors before any house or building may be moved into, within, or out of the township. The granting of such license or permit shall be within the sound discretion of the board of township supervisors and no house or building shall be moved into, within, or out of the township until such permit or license has first been issued;
> (6) To prescribe the manner of constructing buildings and structures to be erected within the township, and to require that a building permit shall be first obtained from the board of township supervisors before the construction of any building or structure within the township;
> (7) To prevent and provide for remedying any dangerous construction or condition of any building, enclosure or manufactory or any equipment used therein, and to require all buildings and places to be put in a safe condition;
> (8) To regulate and restrict the height, and size of buildings and other structures and the location and use of buildings, structures and land for trade, industry, residence or other purposes, with the object of promoting the health, safety, morals and the general welfare of the township, and for such purpose to divide the township into districts for zoning purposes;
> (9) To abate any nuisance found within its corporate limits;
> (10) To compel compliance with and to prevent the violation of any of the provisions of this section.
> *The powers as provided in this section shall be subordinate to any zoning or other powers of the county or adjoining municipality when such powers are, or shall be, exercised by said county or municipality in respect to said township.*
> (Emphasis added).

[¶ 18.] *Lincoln County* is highly persuasive.[9] Here, as in *Lincoln County*, inconsistent actions are clearly the result as Turner County has allowed what Centerville Township seeks to either prohibit or mandate requirements in excess of those required by the County. If every township were allowed to set its own standards, the result could be a conglomerate of dissimilar administrative rules. Anyone who wished to commence operations of a commercial feedlot would face the threshold requirements of three entities—the State Division of Environment and Natural Resources, the county zoning commission and the township. This result is not required by the Legislature. We cannot say the Legislature has delegated to townships the authority to adopt zoning ordinances in conflict with the laws previously enacted by the Legislature.[10]

[¶ 19.] We hold under the facts of this case and SDCL 8–2–1(4), Centerville Township is not expressly granted the power to zone or to regulate in a manner contrary to the Turner County zoning ordinance. This holding recognizes a legislatively mandated uniform application of state and county regulations.

[¶ 20.] This does not leave the Township without authority to protect its citizens. If, as here, the subject matter of the dispute is preempted by county ordinance, after it unsuccessfully opposed the granting of the permit by the County, the Township could have appealed the decision of the County to the circuit court pursuant to SDCL 7–8–27. *See Tri County Landfill Ass'n v. Brule County*, 535 N.W.2d 760 (S.D.1995). In addition, if the protections of an existing county zoning ordinance are not being properly enforced, any taxpayer of the county may institute a mandamus action under SDCL 11–2–35 to "compel specific performance by the proper official or officials of any duty required by this chapter and by any ordinance adopted thereunder."

[¶ 21.]SDCL 8–2–1(4) does authorize a township to act in instances that have not been assumed by the state or counties under their regulatory authority and are "for the protection of the lives and property of [the township's] inhabitants." As such, the scope of this township authority and when it may be exercised is outside of

9. Other jurisdictions provide us with persuasive case authority as to conflicts between state, county and township police powers. For example in *Premium Standard Farms, Inc., v. Lincoln Township of Putnam County*, a hog farming corporation brought an action against the township challenging the validity of the township's ordinance regulating commercial feedlots. 946 S.W.2d 234, 235–6 (Mo.1997). The court found the township had exceeded its statutorily granted zoning power when it enacted this ordinance and had neither express nor implied power to bring a public nuisance action. *Id. See also Detroit Edison Co. v. Township of Richmond*, 150 Mich.App. 40, 388 N.W.2d 296 (1986). (The question before the Michigan Court of Appeals was whether a township ordinance was invalid because it conflicted with state statutes or the state regulatory scheme. The Court of Appeals looking at the statute, determined it was not the intent of the Legislature to allow individual townships to regulate electrical transmission lines); *Crooks Township v. ValAdCo*, 504 N.W.2d 267 (Minn.Ct.App.1993) (township sought injunctive relief to prohibit construction of hog confinement facilities in violation of township ordinance. The Court found that the ordinance not only was preempted by state law but was also in conflict with it.).

10. Due to the brevity of the record we cannot tell whether Welsh conducted hog farming operations before he sought to construct the facility which is the subject of the dispute. If he did, SDCL 21–10–25.2 prohibits public or private nuisance suits for expansion of agricultural operations "if all county, municipal, state, and federal environmental codes, laws, or regulations are met by the agricultural operation." Noticeably missing is any requirement that the agricultural operation comply with township codes, laws or regulations for the proposed expansion.

the resolution of the issue now before us, and a definition of its parameters awaits another day.

[¶ 22.] Based on the above rationale, we affirm the circuit court.

[¶ 23.] MILLER, Chief Justice, and SABERS, AMUNDSON and KONENKAMP, Justices, concur.