#23898-r-JKK

**2007 SD 54**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,          Plaintiff and Appellant,

    v.

WAYNE R. STEVENS,          Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE THOMAS L. TRIMBLE
Judge

\* \* \* \*

LAWRENCE E. LONG
Attorney General

KATIE L. HANSEN
Assistant Attorney General      Attorneys for plaintiff
Pierre, South Dakota         and appellant.

BRANDY M. RHEAD
Pennington County Public
 Defender's Office          Attorneys for defendant
Rapid City, South Dakota     and appellee.

\* \* \* \*

ARGUED ON MARCH 21, 2007

OPINION FILED **06/13/07**

#23898

KONENKAMP, Justice

[¶1.] Law enforcement officers in Rapid City conducted a trash pull of defendant's garbage over five months after obtaining information that led them to believe he was committing a crime. After finding evidence of a controlled substance in the trash, the officers obtained a warrant to search defendant's home. The search revealed more evidence, and defendant was indicted. Defendant moved to suppress the evidence claiming that he had a protected privacy interest in his trash and the officers did not have reasonable suspicion to search it. The circuit court suppressed the evidence. The State appeals, and we reverse.

## Background

[¶2.] In July 2004, Officer Kraig Wood received information that Wayne Stevens (defendant) had an altercation with Troy Klug, who shortly thereafter went missing. Officer Wood believed that this altercation was related to drugs and to Klug's disappearance. On July 28, 2004, Officer Wood interviewed defendant about the altercation and his association with Klug. The officer also asked defendant about his association with Troy Tiegen and Cynthia Kindall, who knew Klug through their use and sale of methamphetamine. Defendant admitted to Officer Wood that approximately two weeks earlier he and Klug had a disagreement over $300 that Klug owed him. Defendant, however, denied any involvement in Klug's disappearance. He also denied knowing Kindall, but admitted to having a limited association with Tiegen. Officer Wood did not investigate defendant any further after the July 28 interview. The missing persons' investigation on Klug, however, continued.

-1-

[¶3.]    Over five months later, on January 14, 2005, Officer Wood decided to conduct a search of defendant's trash, which was set out by the curb for collection in front of his residence.  The officer told the city-employed garbage collector to empty his trash hopper before picking up defendant's trash.  After defendant's trash was collected, the officer instructed the employee to drive a few blocks where he would obtain it from the employee.  Officer Wood took the trash to a county shop where he and another investigator sorted through it looking for drug-related items.  The officers found an empty pen body containing a white substance, which was later determined to be methamphetamine hydrochloride.  The officers also found two pieces of mail with defendant's name and address, thus validating that the trash was collected from his residence.

[¶4.]    Based on the trash search and the information from the July 28 interview, Officer Wood obtained a warrant to search defendant's home.  During the search, the officers found drug paraphernalia and methamphetamine.  Defendant was indicted for possession of a controlled substance and possession of drug paraphernalia.  He moved to suppress the evidence alleging that Officer Wood had no reasonable suspicion to search his trash.  He also claimed that because the trash search lacked reasonable suspicion there was no probable cause to issue the search warrant.  The circuit court suppressed the evidence, concluding that (1) defendant had a limited privacy interest in his trash, (2) the officers lacked reasonable suspicion for the trash search, and (3) the search of defendant's home lacked probable cause.

## Standard of Review

[¶5.] "'A motion to suppress for an alleged violation of a constitutionally protected right raises a question of law, requiring de novo review.'" State v. Hess, 2004 SD 60, ¶9, 680 NW2d 314, 319 (quoting State v. Herrmann, 2002 SD 119, ¶9, 652 NW2d 725, 728 (citations omitted)); State v. Tofani, 2006 SD 63, ¶24, 719 NW2d 391, 398. Findings of fact are reviewed under the clearly erroneous standard. *Tofani*, 2006 SD 63, ¶24, 719 NW2d at 398. Yet, "the application of a legal standard to those facts" is reviewed de novo. *Hess*, 2004 SD 60, ¶9, 680 NW2d at 319 (citing State v. Lamont, 2001 SD 92, ¶12, 631 NW2d 603, 607 (citation omitted)).

## Analysis and Decision

[¶6.] In its appeal, the State contends that defendant had no expectation of privacy in the trash searched, based on our holding in *State v. Schwartz*, 2004 SD 123, ¶17, 689 NW2d 430, 435-36. The State further asserts that the circumstances here are analogous to those in *Schwartz*, in that defendant has failed to present sufficient evidence to satisfy the two-part test for recognizing a privacy interest deserving of constitutional protection. *See id.* Defendant, on the other hand, claims that *Schwartz* is distinguishable because law enforcement officers here did not have reasonable suspicion before searching his trash, and the citizens of Rapid City would recognize a limited privacy interest in their trash.

[¶7.] In *Schwartz*, we examined whether a privacy interest exists in one's trash based on the language of the South Dakota Constitution and the United States Constitution. 2004 SD 123, ¶¶13-16, 689 NW2d at 434-35. We recognized

that the Fourth Amendment to the United States Constitution and Article VI, section 11 of our constitution "prohibit unreasonable searches and seizures by government officials." *Id.* ¶11. However, to implicate these constitutional protections, "[a]n individual must have a reasonable expectation of privacy in the place searched or article seized. . . ." State v. Christensen, 2003 SD 64, ¶11, 663 NW2d 691, 694 (citing Katz v. United States, 389 US 347, 88 SCt 507, 19 LEd2d 576 (1976)).

[¶8.]       In *Schwartz*, we acknowledged that the United States Supreme Court, in *California v. Greenwood*, 486 US 35, 39, 108 SCt 1625, 1625, 100 LEd2d 30 (1988), declined to extend constitutional protection to trash unless people manifest "'a subjective expectation of privacy in their garbage that society accepts as objectively reasonable.'" 2004 SD 123, ¶14, 689 NW2d at 434 (citation omitted). In light of *Greenwood* and the language of our constitution, this Court also declined "to adopt a blanket rule extending the constitutional protection against unreasonable searches and seizures to trash." *Id.* ¶17. We used a two-part test to determine whether persons had a recognized privacy interest in their searched trash, similar to the test adopted by the United States Supreme Court. *Id.*; *see also Greenwood*, 486 US at 39, 108 SCt at 1625, 100 LEd2d 30. To establish a protected privacy interest in trash, a person (1) must have "'exhibited an actual subjective expectation of privacy'" and (2) society must be "'willing to honor this expectation as being reasonable.'" *Schwartz*, 2004 SD 123, ¶17, 689 NW2d at 435 (quoting Cordell v. Weber, 2003 SD 143, ¶12, 673 NW2d 49, 53 (quoting State v. Lowther, 434 NW2d

747, 754 (SD 1989) (citation omitted))). In *Schwartz*, we concluded that the defendants failed to meet both prongs of the test and upheld the search. *Id.* ¶19.

[¶9.] Here, the circuit court, in ruling that defendant's trash was deserving of constitutional protection, interpreted certain language from *Schwartz* and construed the Rapid City Ordinances related to trash collection to hold that reasonable suspicion must exist before law enforcement officers can conduct a trash search. The ordinances, the court declared, granted each citizen of Rapid City, "at minimum, a limited privacy interest" in their trash, because the ordinances "not only control how the garbage is collected, but how an individual citizen must leave or present his or her garbage for collection[.]" Then, because in both *Schwartz* and *Greenwood* law enforcement officers had articulable reasons for searching the particular defendant's trash, the circuit court held that such suspicion was required before defendant's trash could be searched. *See* 2004 SD 123, ¶19, 689 NW2d at 436 ("Agent Even had articulable reasons for focusing on the Schwartzes' trash"); 486 US at 37, 108 SCt at 1627, 100 LEd2d 30 (before the search the investigator received information that the defendant was engaged in narcotics trafficking). The circuit court also found particularly persuasive the rationales in *Litchfield v. State*, 824 NE2d 356, 363-64 (Ind 2005) and *State v. A Blue in Color, 1993 Chevrolet Pickup (A Blue Pickup)*, 116 P3d 800, 805 (Mont 2005), which both held that articulable individualized suspicion was required before a trash search.

[¶10.] Although we noted in *Schwartz* that the law enforcement officers had articulable reasons to believe that the defendants were committing a crime, this fact does not necessarily mean that reasonable or articulable individualized suspicion is

required before any trash search. *See* 2004 SD 123, ¶19, 689 NW2d at 436. Rather, a defendant must satisfy the two-part test identified in *Schwartz* before this Court will find that there is a "sufficient privacy interest in the area searched for constitutional protection to apply[.]" *Id.* ¶17. Absent satisfying these elements, such reasonable expectation of privacy does not exist and there is no "search" subject to constitutional scrutiny under the Fourth Amendment or the South Dakota Constitution.

[¶11.] Even if we assume that defendant can satisfy the first prong, establishing that he had an actual subjective expectation of privacy in his trash, the Rapid City Ordinances do not support the contention that there exists an objective expectation of privacy that society is willing to recognize as reasonable. While city ordinances may, in some cases, be reflective of societal expectations of privacy, they do not manifest such an expectation simply because they dictate how persons are to place their trash for collection or how the trash is to be collected.[1] Nothing in these

---

1. Along with his motion to suppress, defendant presented four Rapid City Ordinances for the circuit court to review. The ordinances are located in Title 8 "Health and Safety." The first ordinance is chapter 8.36 entitled "Smoke Abatement," and pertains to "Restrictions on solid fuel burning devices." The ordinance prohibits persons from burning inappropriate fuel in any solid fuel burning device.

   The next ordinance in the same chapter pertains to "Open burning rules." This ordinance contains restrictions on open burning, conditions for open burning approval, and basis for approval.

   Still within Title 8, "Health and Safety," defendant submitted chapter 8.08 entitled "Garbage and Refuse." This ordinance addresses "Collection and containers—Family domestic units." It states that the "city shall be solely responsible for all residential garbage and trash collection within new subdivisions in the city." Those subject to this ordinance will "be issued one

   (continued . . .)

ordinances suggests that Rapid City enacted them to protect a citizen's interest in garbage privacy. These ordinances were obviously enacted solely to maintain society's interest in sanitation.

[¶12.]     Nevertheless, defendant asks that we "find at least a limited, constitutionally protected privacy interest in trash" sitting at the curb because other courts recognize a limited privacy interest. In particular, defendant relies on *Litchfield,* 824 NE2d at 363-64 and *A Blue Pickup*, 116 P3d at 805. In *Litchfield*, the Indiana Supreme Court interpreted its state constitution to conclude that articulable individualized suspicion is required before a trash search. 824 NE2d at 360; 363-64. However, Indiana's state constitutional jurisprudence is distinctly different than South Dakota's. More than a decade ago, Indiana abandoned the expectation of privacy test used by the United States Supreme Court and our Court to construe Fourth Amendment protections. *See id*. at 359. Thus, the Indiana Supreme Court declared that trash searches without reasonable suspicion are simply "unreasonable," without dealing with the expectation of privacy question. *Id*. at 363-64. And, the Montana Supreme Court, in the case of *A Blue Pickup*, appended Indiana's reasonableness test onto its own constitution, without

_____

(. . . continued)

      automated collection container from the city," which shall be the "only" container used. Garbage must be placed in the container, bagged and tied. Loose garbage is not permitted and violators can be penalized. The container must be placed "in a location suitable and readily accessible for collection by the automated collection truck on the scheduled collection day."

      Finally, defendant submitted chapter 8.12, entitled "Litter", which addresses the "Violation—Penalty." In this ordinance, "[v]iolation of any provision of

                              (continued . . .)

constitutional analysis. 116 P3d at 805. It held that to "guide the conduct of police in the future," "articulable individualized suspicion" would be required. *Id*. But here, except to note an insignificant difference in wording from its federal counterpart, defendant has not identified anything in South Dakota's constitution that would require reasonable suspicion before a trash search.

[¶13.]     Defendant does not argue that we should abandon the expectation of privacy test. He simply asks us to adopt the reasoning from the Indiana and Montana courts. This we decline to do. Under our law, defendant has not presented evidence to satisfy the two-part test from *Schwartz* to establish a privacy interest in his trash deserving of constitutional protection. *See* 2004 SD 123, ¶17, 689 NW2d at 435.

[¶14.]     Reversed.

[¶15.]     ZINTER, Justice, concurs.

[¶16.]     GILBERTSON, Chief Justice, concurs in result.

[¶17.]     SABERS and MEIERHENRY, Justices, dissent.


GILBERTSON, Chief Justice (concurring in result).

[¶18.]     I join in the opinion of the Court except for its declaration that a municipality in South Dakota has the legal authority, by ordinance, to create an

---

(. . . continued)
      this chapter may be punishable by not more than thirty days in jail or a fine
      not more than one hundred dollars, or both."

objective expectation in the privacy of one's trash. Under the South Dakota Constitution, it would appear to me that the power to take such action rests solely with the South Dakota Legislature.

[¶19.]    Article IX, section 1 of the South Dakota Constitution vests plenary power over municipal corporations with the Legislature. Both prior to and immediately following the adoption of this provision, it was recognized that a municipal corporation only possessed those powers expressly granted to it by the Legislature, those powers that are fairly implied or incidental thereto and those powers essential to the declared objects and purposes of being a municipal corporation, "not simply convenient, but indispensable." Treadway v. Schnauber, 1 Dak 236, 46 NW 464, 464 (1875); *see also* City of Sioux Falls v. Kirby, 6 SD 62, 62, 60 NW 156, 157 (1894) (citation omitted). This continues to be the law in this State. Donovan v. City of Deadwood, 538 NW2d 790, 792 (SD 1995). "Counties, like cities, lack inherent authority and derive their power from the legislature." Pennington County v. State *ex rel* Unified Judicial System, 2002 SD 31, ¶10, 641 NW2d 127, 131 (citing City of Marion v. Schoenwald, 2001 SD 95, ¶6, 631 NW2d 213, 216; Welsh v. Centerville Township, 1999 SD 73, ¶10, 595 NW2d 622, 625; *Donovan*, 538 NW2d at 792 (citations omitted)).

[¶20.]    The authority granted by the Legislature to municipalities over garbage is contained in SDCL 9-32-10[2] and SDCL 9-32-11.[3] A review of these

---

2.    SDCL 9-32-10 states:

(continued . . .)

statutes shows no granting of authority to a municipality to place with its citizens an objective expectation of privacy in one's trash when it has been put on the curb for city collection. To the contrary, it appears that the responsibility, and thus control over the garbage, by mandate, is placed on the municipality once the garbage is in the municipality's possession. *See* SDCL 34A-6-1.9.[4]

[¶21.] According to the South Dakota Secretary of State, there are approximately 309 municipalities in this State. *See generally 2005 South Dakota Legislative Manual*, 605-14. Thus, under the theory of the circuit court and this Court, each of these 309 municipalities can deny, create in part or in total, some type of objective expectation of privacy in one's trash. Given that drugs are a state-wide problem and the response in part is on a state-wide basis, I do not think the

_____

(. . . continued)

> Every municipality shall have power to regulate and prevent the placing of ashes, dirt, garbage, or any offensive matter in any street or public ground or in any body or stream of water, within the municipality.

3. SDCL 9-32-11 states:

> Every municipality shall have power to collect and dispose of and regulate the manner of handling of garbage and other waste material and for such purpose to acquire, establish, maintain, operate, and regulate equipment and garbage disposal plants, incinerators, and dumping grounds and to fix and collect charges for such services, and to contract with one or more persons for the collection and hauling of garbage and other waste material from the municipality or districts established therein.

4. SDCL 34A-6-1.9 states:

> Any nation, state, or first or second class municipality, county or political subdivision which has solid waste generated within its boundaries disposed of in this state shall be responsible in perpetuity for the solid waste and liable in perpetuity for any pollution or other deleterious effect caused by it.

Legislature intended for law enforcement to research each municipality's ordinances on garbage before commencing a trash inspection for illegal drugs. The Legislature did not intend trash to be objectively protected from search by law enforcement in Pierre while potentially not so protected across the bridge in Ft. Pierre.

[¶22.] *California v. Greenwood*, 486 US 35, 108 SCt 1625, 100 LEd2d 30 (1988) and *State v. Schwartz*, 2004 SD 123, 689 NW2d 430 set the constitutional parameters for police inspection of a person's garbage placed on the curb for collection. In South Dakota, the Legislature has not authorized municipalities to intercede.

[¶23.] For the above reasons, I respectfully concur in result.


SABERS, Justice (dissenting).

[¶24.] Consistent with my rationale expressed in *State v. Schwartz*, I dissent. 2004 SD 123, ¶¶58-69, 689 NW2d 430, 445-449 (Sabers, J., dissenting). Specifically, a person has an expectation of privacy in his garbage that society recognizes as reasonable. That is why people place their garbage in closed, opaque garbage bags inside closed garbage cans to be hauled to the dump, and not messed with. This is especially so where city ordinances direct how and where garbage will be placed for disposal and the police have no reasonable suspicion or probable cause.

[¶25.] People have an expectation of privacy in their garbage that society recognizes as reasonable. The ordinances required Stevens to leave the garbage container "in a location suitable and readily accessible for collection by the

automated collection truck on the scheduled collection day." Rapid City Ordinance 8.08, Garbage and Refuse. The garbage was collected by an "automated collection truck" not a person, leading one to believe no one would even touch his garbage before it was commingled at the city landfill.

[¶26.] There is no way, short of hauling the garbage yourself, that one can protect his or her garbage from potential search by the police.[5] In theory, Stevens could have stood on the curb with his garbage to prevent anyone from looking into it and waited until the automated collection truck picked it up. However, even in this scenario, his garbage would still have been susceptible to the search as the police were waiting to get the garbage after pickup.

[¶27.] At oral argument, the author of the plurality opinion stated, "I think we can all assume that each one of us might be offended personally [by someone going through our trash]." If each one of us has an expectation of privacy in their garbage, then logically society would recognize that right as reasonable. After all, society consists of individuals. By placing our garbage next to the curb we may be saying, "we do not want this anymore," but we are not saying, "we do not care who sees it or goes through it." Sometimes our garbage contains very private materials; materials that we do not want people to see and we expect these matters will remain private. *See Schwartz,* 2004 SD 123, ¶59, 689 NW2d at 445 (Sabers, J.,

---

5.      It is not clear that hauling one's garbage is even an option. The ordinance says "the city shall be solely responsible for all residential garbage and trash collection." Participation appears to be mandatory. At any rate, as argued in *Schwartz*, the city garbage collector is the agent of the homeowner, and the homeowner has a reasonable expectation of privacy to have the garbage hauled to the dump. 2004 SD 123, ¶67, 689 NW2d at 448.

dissenting) ("Information that may be gleaned from a household's waste is so deeply personal that an average South Dakotan would be mortified to know that their local police or sheriff's department was examining its contents."). Things such as prescription labels, credit card statements, saving and checking account balances, letters, the food we eat, the things we read, and so on. Many details of our lives can be gleaned from the contents of our garbage. Surely, society recognizes that it is reasonable to have an expectation of privacy in the details of our lives discoverable in garbage.

[¶28.] Professor Anthony Amsterdam's[6] definition of reasonable expectation of privacy has been adopted by several courts. He explains:

> The ultimate question, plainly, is a value judgment. It is whether, if the particular form of surveillance practiced by the police is permitted to go unregulated by constitutional restraints, the amount of privacy and freedom remaining to citizens would be diminished to a compass inconsistent with the aims of a free and open society.

Stephen E. Henderson, *Learning From All Fifty States: How to Apply the Fourth Amendment and its State Analogs to Protect Third Party Information From Unreasonable Search*, 55 Cath U L Rev 373, 420-21 (quoting Anthony G. Amsterdam, *Perspectives on the Fourth Amendment*, 58 Minn L Rev 349, 403 (1974)). *See also* People v. Oates, 698 P2d 811, 816 (Colo 1985) (en banc) (adopting Amsterdam's formulation); State v. Hempele, 576 A2d 793, 802 (NJ 1990) (same); State v. Nagel, 880 P2d 451, 454 (Or 1994) (en banc) (same); State v. Morris, 680

---

6. University Professor and Professor of Law, New York University School of Law.

A2d 90, 93-94 (Vt 1996) (same); 1 Wayne R. LaFave, *Search and Seizure* § 2.1(d) (4thed 2004) (same). Surely our rights and freedoms as citizens are diminished by allowing suspicionless trash searches.

[¶29.] Because Stevens had an expectation of privacy that society recognizes as reasonable, the search of this trash violated the Fourth Amendment and the trial court should be affirmed.

[¶30.] At the VERY LEAST, the police should have probable cause before rummaging through someone's garbage. Under no circumstances should they be allowed to simply choose a neighborhood during garbage day and wander up and down the street to see what may or may not be happening. Under the plurality opinion, this is exactly what the police could do. The plurality opinion concludes that it is not enough to allow trash pulls when police have articulable suspicion but no warrant. Now, it permits trash searches where the officer has no suspicion whatsoever. The holding of this case vitiates the Fourth Amendment's protection against unreasonable searches[7] and diminishes our rights "inconsistent with the aims of a free and open society." Amsterdam, *Perspectives on the Fourth Amendment*, 58 Minn L Rev at 403.

[¶31.] During oral argument, much was made about the fact that no legislation had been enacted since *Schwartz*. That the Legislature has not yet acted is not the point. In several cases where the United States Supreme Court has found

---

7.   I realize that the plurality opinion concludes a trash pull is not a search under the Fourth Amendment. However, I contend the expectation of privacy in our garbage is one that society recognizes and does constitute a search.

the expectation of privacy in question is not one society is willing to accept as reasonable, Congress has overruled that decision by enacting legislation protecting the privacy right. *See* Henderson*, Learning From All Fifty States: How to Apply the Fourth Amendment and its State Analogs to Protect Third Party Information From Unreasonable Search*, 55 Cath U L Rev at 374-75 (citing United States v. Miller, 425 US 435, 437, 96 SCt 1619, 48 LEd2d 71 (1976) (no expectation of privacy in bank records); Right to Financial Privacy Act of 1978, 12 USC §§ 3401-3422 (2000), amended by 12 USCA §§ 3401-3422 (West Supp 2005); Smith v. Maryland, 442 US 735, 745, 99 SCt 2577, 61 LEd2d 220 (1979) (no privacy in dialed phone numbers); 18 USC §§ 3121-3127 (2000 & Supp 2002) (providing statutory protection for dialed phone numbers)). Therefore, at least in those cases, society recognized an expectation of privacy, even where the Court said one did not exist. One day, the Legislature may decide that the details of our private lives contained in our garbage should remain private and there is a societal expectation of privacy in our garbage. As indicated, that the Legislature has not yet acted does not mean society does not recognize the expectation of privacy as reasonable.

[¶32.]     The plurality opinion places substantial reliance on the United States Supreme Court case of *California v. Greenwood*, which was decided in 1988. Reasonable expectation of privacy has advanced since then. I respectfully submit that the plurality opinion is placing itself in a position similar to those following the United States Supreme Court cases of *Dred Scott* and *Plessy v. Ferguson*, both of which were wrong when written. *Dred Scott v. Sanford*, 60 US 393, 19 Haw 393, 15 LEd 691 (1856); *Plessy*, 163 US 537, 16 SCt 1138, 41 LEd 256 (1896).

#23898

[¶33.]     There is an objectively reasonable expectation of privacy in our garbage.  The trial court properly suppressed the evidence and should be affirmed.  Therefore, I dissent.

[¶34.]     MEIERHENRY, Justice, joins this dissent.